United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 5, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
For the Fifth Circuit**

No. 03-20065

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROBERT FROMAN,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas

Before KING, Chief Judge and DAVIS and EMILIO M. GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant-Appellant Robert Froman ("Froman") challenges his convictions and sentence for receipt, possession, and conspiracy to distribute child pornography. His appeal is based on the assertion that the fruits of the search of his home and later confession should have been suppressed because the warrant authorizing the search was predicated on intentionally or recklessly false statements. Because the affidavit supports a finding of probable

cause even without the alleged false statements, we affirm the district court's denial of Froman's suppression motion.

## I.

On December 6, 2000 pornographer Mark Bates ("Bates") founded an online club called The Candyman Group ("The Group" or "Candyman") using a free internet service called eGroups.[1] In general, internet groups, like those available through eGroups, allow individuals with similar interests to band together and share information through the world wide web. Members of these groups are empowered to share interests, talents, and knowledge. Candyman did not have such a benign purpose. The singular goal of the Group was to collect and distribute child pornography and sexually explicit images of children.

All Egroups are organized into different categories according to interest. Candyman was categorized as an adult, transgender, image gallery, at once suggesting its sexual content. The main web page announced to anyone considering joining the Group its purpose:

> This group is for People who love kids. You can post any type of messages you like too [sic] or any type of pics and vids you like too [sic].
>
> P.S. IF WE ALL WORK TOGETHER WE WILL HAVE THE BEST GROUP ON THE NET.

---

[1]At the time of the creation of Candyman, the service was owned and run by a business entity called eGroups. That company was acquired by Yahoo! in late January 2001, just after the government began investigating the group. As a result the FBI dealt with Yahoo! not eGroups in investigating the Group and its members.

After reviewing the web page and learning the group's mission, anyone who wished to join the Group could do so either by clicking the subscribe link on the main web page or by sending an e-mail to the group administrator. Those subscribing via the website subscribe link were presented with e-mail delivery options allowing them to choose whether to receive all e-mails addressed to the group as a whole, receive a daily digest of e-mails addressed to the group, or to receive no e-mails and simply review the messages on the website where they are archived. Members who joined via e-mail were sent a confirmation e-mail welcoming the new member to the group but would not necessarily be presented with e-mail delivery options. Subscription to Candyman was free of charge, and simple directions for revoking membership were provided at the bottom of all correspondence. Additionally, both a link and an e-mail address on the Group's main web page could be used to cancel membership.

Once a new member subscribed, he had full access to the website and all of its functions. Members could post electronic pictures and video clips to the website for other members to access and download. They could use the chat feature to converse with each other in real time. Members could use the group to disperse images, videos and text via e-mail. Each message addressed to the group was sent to all members who requested e-mail delivery and was also stored on the website for members to review at their convenience. E-mails were also sent by the Group to members

3

notifying them of new files that had been posted to the site and at times giving a brief description of the pornography.   A poll page was included on the website that allowed group members to vote on matters important to them.  Candyman members voted on the types of images they preferred: "What you all like to see more boys or girls and whats age and more actions or more soft pics pick as many as need. [sic]."   Finally, a "links" page provided links to other webpages and other online groups that supplied child pornography.

Defendant Froman joined Candyman on January 9, 2001.  He was a member of the site from that date until the site was shut down on February 6, 2001.

The investigation of the Candyman Group began in early January 2001, when Special Agent Geoffrey Binney ("Agent Binney"), acting undercover, joined the Group.  After subscribing, Binney began receiving all of the e-mails that were addressed to the Group by other members, many of which contained child pornography.  From the time Agent Binney joined until the Group was shut down, he received almost 500 e-mails, containing almost 300 images of child pornography or child erotica.  Agent Binney further  monitored the files uploaded to the website, and captured approximately 100 illegal images and video clips.

In mid January 2001, Agent Binney contacted Yahoo!, identified himself as an FBI agent, and probed for information on the group and its members.  The representative from Yahoo! refused to answer Agent Binney's questions.  Given the fruitless inquiries on January

4

19, 2001, Agent Binney obtained a subpoena directing Yahoo! to divulge any identifying information regarding members. Yahoo! responded to the subpoena on February 6, 2001. It shut down the site and provided Agent Binney with a list of approximately 3400 e-mail addresses of individuals who were Group members when Candyman was shut down.[2] The list provided no indication that e-mail delivery options were available to members.

Agent Binney and the FBI sorted the 3400 e-mail addresses in the member list by e-mail address providers, and sent grand jury subpoenas to those providers, requesting Group members' names, addresses, phone numbers, and any other identifying information. Once the FBI obtained addresses from service providers, Group members were assigned to local FBI offices for further investigation. Agent Binney provided local offices with template search warrant affidavits which contained all of the basic information that had been collected in the investigation. Local agents could simply fill the gaps in the affidavit with the suspect specific information and present that affidavit to a magistrate to obtain a warrant.

Froman had subscribed to the Group under the e-mail address fbunkhousebob@aol.com, and through a subpoena to America On Line ("AOL") the FBI discovered his address, phone number, and other billing information. With this knowledge the FBI ultimately

---

[2]Agent Binney had asked Yahoo! to keep the site running so that the investigation could continue. Yahoo!, however, ignored that request.

tracked him to a bunkhouse that he managed in Pasadena, Texas.  AOL also provided the alias screen names that Froman used, which included Littlebuttsue and Litletitgirly.

FBI Agent Michael Millard presented the information gathered on Froman to Magistrate Judge Stacy in an affidavit, using Agent Binney's sample affidavit as a template.  The affidavit primarily described the Candyman Group, explained that the FBI knew Froman was a member, and stated that all members of the Group received e-mails containing child pornography addressed to the Group.  The magistrate issued a warrant and Agents Millard and a team of FBI agents and local police executed that warrant on November 30, 2001. During the search the team seized a computer, video camera, and video tapes, as well as hundreds of hard copy printouts of digital images.  Some of the hard copy images matched those located on the Candyman site.  On the hard drive they discovered hundreds of images of child pornography.  Thousands of images were recovered in all.  One of the tapes seized depicted Froman having actual or simulated sexual relations with his twelve-year-old daughter. Furthermore, during the execution of the warrant, Froman, having been read his rights, admitted receiving child pornography over the internet and confessed to creating a videotape of himself and his daughter engaged in sexual acts.

In March 2002 Froman was indicted with seven other defendants. This indictment was followed by a superseding indictment in April 2002, in which Froman was charged with conspiracy to knowingly

6

transport, receive, and distribute child pornography in interstate commerce via the computer under 18 U.S.C. § 2252A(b)(1); receipt of child pornography in interstate commerce via computer under 18 U.S.C. § 2252(a)(2); and possession of child pornography transported in interstate commerce via computer under 18 U.S.C. 2252A(a)(5)(B).

In late May 2002, approximately six months after the search of Froman's apartment, Cathy McGoff, a compliance manager from Yahoo!, indicated in a similar proceeding against another Candyman member in St. Louis, that members were provided with e-mail delivery options. She stated that members could opt in or opt out of receiving e-mails addressed to the Group. This statement was confirmed by additional Candyman member lists provided to the FBI in June 2002. The new evidence demonstrated that each member had the option of receiving all of the e-mails addressed to the group, a daily summary, or no e-mails at all.

Based upon the new information from Yahoo! Froman moved to suppress the evidence recovered in the search and the subsequent confession. Froman argued that the statement in the affidavit that all group members received all e-mails addressed to the group was knowingly false or was made recklessly. Froman contended that without this statement the magistrate presented with the affidavit had no basis to find probable cause that Froman had received, possessed, or distributed child pornography.

The district court recognized that Group members had the

7

option to receive or not receive e-mail but observed that because Agent Binney subscribed via e-mail and not the web site link he did not observe the e-mail options, and he was not notified of the options by Yahoo! during his investigation. Based on the district court's finding that Agent Binney had no reason to believe that the statements in the affidavit to the magistrate were false the district court denied the motion to suppress. The district court also found that even if the statement that all members received all e-mails was knowingly false, there was probable cause to issue a search warrant even without the misstatement.

Once the motion to suppress was denied, Froman waived his right to a jury trial and in August 2002 proceeded with a bench trial in which all of the facts were stipulated. The district court found Froman guilty on all three counts.

In December 2002, the FBI issued two internal investigation reports which concluded that Agent Binney was in fact presented with e-mail delivery options at the time he subscribed to Candyman. Froman thereafter reurged the motion to suppress based upon his interpretation of this new evidence that Agent Binney knew of the e-mail delivery options and lied in the affidavit. Froman's motion was summarily denied.

Before sentencing, the government moved for an upward departure based upon the heinous nature of the crime, particularly his conduct in abusing and videotaping his own daughter and widely distributing the pictures and videos. The judge granted that

8

motion, adding three offense levels and eventually sentencing Froman to 180 months for counts 1 and 3, and 60 months for count 5, all to run concurrently.

In this appeal Froman challenges the denial of the motion to suppress, the denial of his reurged motion to suppress, the sufficiency of the evidence to support a guilty verdict, and the upward departure in his sentence.

## II.

## A.

In reviewing a district courts ruling on a motion to suppress the court reviews findings of fact for clear error and findings of law *de novo*. *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002).

> Where a search warrant is involved, this Court employs a two-step process for reviewing a district court's denial of a motion to suppress. First, we determine whether the good-faith exception to the exclusionary rule applies. The good-faith exception provides that where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded. *See United States v. Leon*, 468 U.S. 897, 919-20 (1984). If the exception applies, our analysis ends, and the district court's decision not to suppress is affirmed. If the exception does not apply, we then proceed to the second step in the analysis and determine whether the magistrate had a substantial basis for finding probable cause. . . . "If the good-faith exception applies, we need not reach the question of probable cause." *United States v. Cherna*, 184 F.3d 403, 407 (1999).

9

*Id.* (citations omitted).

**B.**

The government argued, before both the district court and this court, that the search of Froman's apartment was justified under the good faith exception. They argue that Agent Binney had no reason to know that his statement that all members of the Group received all e-mails was false, and thus his statement was not knowingly or recklessly untrue. The government explains that Agent Binney received no indication from Yahoo! that e-mail delivery options were available to group members and that he was not presented with that information at the time he joined the Candyman group. The district court agreed, finding, *inter alia*, a good faith exception and refused to suppress the fruits of the FBI search.

When he reurged his motion to suppress, Froman presented the new evidence from the FBI internal investigation that Agent Binney was in fact provided e-mail delivery options on the web page when he joined the Candyman Group.

The district court did not address the new evidence Froman presented in his supplemental motion. The absence of factual findings on whether Agent Binney's statements that all members received all e-mails were intentional false statements or reckless

misrepresentations precludes us from addressing whether the fruits of the search are protected by the good faith exception.

## C.

The district court also agreed with the government's alternative argument that the agent's affidavit supported a probable cause finding even without the controversial statements:

> [E]ven without the disputed statement, the affidavit set forth probable cause to believe a crime of conspiracy to distribute, receive, or possess child pornography, a crime of the distribution, receipt, or possession of child pornography, or all of them had been committed and that the evidence of the crimes could be found on the computers of the Candyman Group members. The affidavit explains the course of the investigation, the Candyman Group's operation and purpose, and it explains how and when Froman joined the group. . . . The search warrant at issue here was directed at 303 Eagle, Pasadena, Texas, a location at which a computer identified as having been used to subscribe to the Candyman Group was located. . . . The affidavit establishes that the Candyman Group's purpose was to trade child pornography among its members. It was common sense to conclude that images of child pornography would be located on the computer and related equipment and accessories. The affidavit also establishes that persons who receive child pornography usually keep it and also receive it from many sources. It was also common sense that a person who is a member of a group involved in the collection of child pornography would have child pornography from a number of sites. There was probable cause for the issuance of the search warrant.

R. 419-18.

Froman argues that the affidavit does not permit a probable cause finding without specific, individualized evidence of possession of contraband. Froman argues that without the statement

11

that all members of the group received e-mails containing child pornography there is no reason to believe that Froman received and therefore possessed illegal images.

In determining whether probable cause exists without the false statements a court must "make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit [minus the alleged misstatements], there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Byrd*, 31 F.3d 1329, 1340 (5ᵗʰ Cir. 1994); *see also Cavazos*, 288 F.3d at 710. In making that determination "'we construe the sufficiency of ... [the] affidavit independent of the district court,' and we are not limited by the clearly erroneous standard." *United States v. McKinney*, 758 F.2d 1036, 1042 (5ᵗʰ Cir. 1985) (quoting *United States v. Freeman*, 685 F.2d 942, 948 (5th Cir.1982)).

"Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." *United States v. Daniel*, 982 F.2d 146, 151 (5ᵗʰ Cir. 1993).

> Of course, "probable cause" means something more than "mere suspicion." Probable cause requires the existence of facts "'sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed" and the person to be arrested (or searched) committed it.

*United States v. Gordon*, 580 F.2d 827, 832-33 (5ᵗʰ Cir. 1978) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

12

"The Fourth Amendment . . . . restraint on government conduct generally bars officials from undertaking a search or seizure absent individualized suspicion." *Chandler v. Miller*, 520 U.S. 305, 308 (1997).

The affidavit in this case either established the following facts or permitted the following inferences.

1. Froman joined Candyman on January 9, 2001, and remained a member until it was shut down on February 6, 2001.

2. The *sole* purpose of the Candyman eGroup, as demonstrated by the statement in its website and the activities generated on the website during the time Agent Binney was a member, was to receive and distribute child pornography and erotica.[3]  All members were given instructions for cancelling membership in the group, and Froman at no time cancelled his membership.[4]

---

[3]    This application for a search warrant stems from an FBI investigation of certain Yahoo! Egroups that existed for the purpose of sharing images of child pornography . . . . The purpose of the Candyman Egroup, as stated on its own website, was as follows:
>    This group is for People who love kids.  You can post any type of messages you like too [sic] or any type of pics and vids you like too [sic].  P.S.  IF WE ALL WORK TOGETHER WE WILL HAVE THE BEST GROUP ON THE NET.

Warrant Aff. at 7.

[4]    **Voluntary Egroup Membership**: In order to join the Egroup, a person had to visit the URL (by invitation or otherwise) and send an e-mail to the group moderator requesting permission to join.  The moderator would then send a confirmation notice to the requestor's e-mail account, advising him that he now had access to the Egroup.  There was no fee to join.  In addition, at the bottom of each e-mail were directions instructing a member what to do if he wanted to stop receiving e-mails from the group and no longer desired to be a member of the group.

13

3. The website enabled members to upload and download images of child pornography, and members even provided input as to the types of images they preferred.[5] Agent Binney described the hundreds of images of child pornography he captured or received in e-mails through his membership in the group.[6] Members were also directed to web pages with similar illegal content.[7]

4. Froman registered a number of screen names with AOL that reflected his interest in child pornography, including Littlebuttsue and Littletitgirly.

The magistrate was entitled to infer from the affidavit that the singular purpose of Candyman was to trade pornography among its members. As such the magistrate was entitled to conclude that the

---

*Id.*

[5]The Candyman Egroup's website had several different features. First, the 'Files' section provided an area for members to post images or video files for others to download. . . . The 'Polls' section allowed the group members to engage in survey activity, e.g., asking 'what age group do you prefer?'

*Id.* at 8.

[6]  SA Binney captured approximately one hundred images and video clips that had been uploaded to the website. The images and video clips . . . depicted prepubescent minors engaged in different sexual activities, . . . genitalia of nude minors, . . . [and] child erotica. . . .
  From January 2, 2001 through February 6, 2001, SA Binney received approximately 498 e-mail messages from the Candyman Egroup, most of which contained images of child pornography or child erotica or information concerning those subjects or the operation of the Egroup. During this period, SA Binney received a total of approximately 183 child erotica images and 105 child pornography images through these e-mails.

*Id.*

[7]"The 'Links' section allowed users to post the URLs for new websites containing similar content." *Id.*

14

overriding reason someone would join this group was to permit him to receive and trade child pornography. We agree with the district court that it is common sense that a person who voluntarily joins a group such as Candyman, remains a member of the group for approximately a month without cancelling his subscription, and uses screen names that reflect his interest in child pornography, would download such pornography from the website and have it in his possession.

The statement in the affidavit that all members automatically received e-mails certainly improved the government's case that Froman had in his possession child pornography that he had received from Candyman e-mails. We are satisfied, however, that even without this statement, there is probable cause for issuance of the warrant.

Appellant essentially argues in the abstract that without evidence of actual possession of contraband, probable cause does not exist. We decline to adopt such a universal rule. All we need decide in this case is that given the predominant purpose of this group to engage in collection and distribution of child pornography and the fact specific evidence of Froman's voluntary membership in that group and his interest in child pornography, the affidavit was sufficient to establish probable cause even when we excise the disputed material.

**III.**

15

In his appellate brief Froman argues that the evidence is insufficient to support the court's finding of guilt. The request for relief is based upon an announced dearth of evidence provided the fruits of the contested search are suppressed. Yet appellant acknowledges that if the motion to suppress is denied then there is sufficient evidence for a conviction. *See* Appellant Br. at 28. Therefore, by appellant's own admission, our refusal to suppress the evidence of the FBI search precludes relief on this argument.

**IV.**

Appellant next challenges the district court's upward departure for both procedural and substantive errors.

At sentencing the district court determined that Froman would receive a base offense level of twenty-seven under U.S. Sentencing Guideline Manual § 2G2.1, *Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material.* The court gave a two level enhancement under § 2G2.1 because one of his victims was between ages twelve and sixteen, and a two level enhancement for the fact that Froman was the parent of one of the exploited victims, resulting in an offense level of thirty-one. That offense level combined with his criminal history category carried a guideline range of 108-135 months. Two days before sentencing, the Government moved for an upward departure based upon the existence of aggravating circumstances not contemplated by the guidelines

16

under § 5K2.0 and that there was extreme conduct by the defendant under § 5K2.8. On December 20, 2002, at the sentencing hearing, the court granted the motion for upward departure and increased the offense level to thirty-four, resulting in a guideline range of 151-180 months. The judge sentenced Froman to the maximum 180 months:

> Counsel for the government has identified a factor that may warrant departure, and the court agrees that it does form the basis for an upward departure.
>
> The court has applied the cross-reference to United States Sentencing Guidelines Section 2G2.1 as a result of the defendant's production of a visual depiction of a minor engaged in sexually explicit conduct. This guideline accounts for a one-time production of a visual depiction.
>
> The evidence identified by the Federal Bureau of Investigation and stipulated to by this defendant during his bench trial included a video tape of this defendant engaged in sexually explicit conduct, including sexual intercourse with his then 12-year-old daughter.
>
> In addition, agents seized from Froman's residence numerous still photographic child pornographic images of his minor daughter. Interpol agents have informed the FBI that in excess of 500 child pornographic images of Froman's minor daughter are inundating the European child pornography black market.
>
> Pursuant to the United States Sentencing Guideline Section 5K2.8 the Court is authorized to depart if the defendant's conduct was unusually heinous, cruel, brutal or degrading to the victim.
>
> The circulation of these images over the Internet provides a greater harm than what is captured in the guidelines. Each time the Internet user downloads, views or further distributes the pornographic images of this minor victim, this results in the prolonged victimization of this child.
>
> Therefore, the Court will depart upward and I adopt the argument of the Government in terms of the amount to adopt upward.

17

Appellant challenges the upward departure arguing that the basis for the upward departure did not place the case outside the "heartland" of cases under § 2G2.1, and that the court failed to notify Froman of its intention to depart upward. Neither argument has merit, and we therefore uphold the district court's sentencing determination.

Appellant's charge that the lower court erred in failing to notify the defendant of its intention to depart upward is baseless. The district court is not required to provide notice of the possibility of departure where the opposing party has so moved. *See Burns v. United States*, 501 U.S. 129, 138-39 (1991).[8] The *Burns* holding has since been codified at Fed. R. Crim. P. 32(h). The government moved for upward departure two days before sentencing. Therefore, the district court was not required to provide additional notice.

Froman's substantive objection to the departure is also unpersuasive. In determining whether departure is appropriate district courts must ask:

> "1) What features of this case, potentially, take it
> outside the Guidelines' 'heartland' and make of it a
> special, or unusual, case?
> 2) Has the Commission forbidden departures based on those

---

[8]"We hold that before a district court can depart upward on a ground *not identified* as a ground for upward departure either in the presentence report or *in a prehearing submission by the Government*, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." *Burns*, 501 U.S. at 138-39 (emphasis added).

18

features?

3) If not, has the Commission encouraged departures based on those features?

4) If not, has the Commission discouraged departures based on those features?"

*Koon v. United States*, 518 U.S. 81, 95 (1996) (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1ˢᵗ Cir. 1993)). Where a factor for departure is forbidden by the guidelines there can be no departure; where a factor is discouraged departure will only occur in the most exceptional cases. *Id.* at 96. If, however, the factor considered is not mentioned by the guidelines, departure is acceptable where, "after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, [a court] decide[s] [the factor] is sufficient to take the case out of the Guideline's heartland." *Id.* (internal quotation marks omitted).

In this case the number of images transmitted and the extent of the distribution of images of Froman's twelve-year-old daughter were considered particularly heinous aspects of the crime and thus factors that place this case outside the heartland of general child pornography cases. The sentencing commission has neither forbidden nor discouraged consideration of such factors. Rather the extremity of the conduct is a factor sentencing courts are authorized to consider under § 5K2.8. Furthermore, the degrading effect on Froman's daughter from the mass distribution of these

19

images is not contemplated by § 2G2.1.  In fact this Court has at least once allowed for upward departure based in part upon the volume of pornographic materials possessed.  *See United States v. Tampico*, 297 F.3d 396, 402 (5th Cir. 2002) (previous 5th Cir. decision accompanying order of remand by the Supreme Court) (reversed and remanded on other grounds).  Finally, the moderate upward departure of 3 levels is measured and fair.

Under the standard of review set out in 18 U.S.C. § 3742(e),[9] we find no error in the district court's decision to depart upward.[10]  As such we decline to disturb the sentence imposed.

## V.

For the reasons stated above we affirm Froman's conviction and

---

[9] The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous, and, except with respect to determinations under subsection (3)(A) or (3)(B), shall give due deference to the district court's application of the guidelines to the facts.  With respect to determinations under subsection (3)(A) or (3)(B), the court of appeals shall review *de novo* the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e); *see also United States v. Bell*, No. 03-20194, slip op. (5th Cir. Nov. 20, 2003).

[10]Froman further argues that there was no evidence that he was the one that distributed the pictures of his daughter.  Factual bases for sentencing need only be shown by a preponderance of the evidence and are reviewed for clear error. *See United States v. McKinney*, 53 F.3d 664, 677 (5th Cir. 1995). Here, the fact that these images Froman created were found widely distributed throughout Europe's black markets supports the inference that Froman at least initially distributed the video which he could foresee would be widely distributed.  Froman's bald denial does not undermine the district court's factual finding.

20

sentence.

AFFIRMED.