**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Micah J. GOURDE, Defendant–**
**Appellant.**

No. 03–30262.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 2004.

Filed Sept. 2, 2004.

---

1004

Janet L. Freeman, Assistant United States Attorney, Seattle, WA, for the appellee.

Colin Fieman, Federal Public Defender's Office, Tacoma, WA, for the appellant.

Before: BRUNETTI, McKEOWN, and GOULD, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellant Micah Gourde entered a conditional guilty plea to one count of possession of visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) and 2256. As stated in the plea agreement, Gourde admitted possessing more than 100 images of child pornography on his home computer; however, Gourde conditioned his guilty plea on his right to appeal the district court's denial of his motion to suppress the images seized from his computer. He asserts that the affidavit in support of the search lacked sufficient indicia of probable cause because it contained no evidence that Gourde actually downloaded or otherwise possessed child pornography; moreover, he contends that the officers acted objectively unreasonable in relying on the allegedly unlawful warrant. We agree and reverse.

I. *Background*

a. *Facts*[1]

In August 2001, an FBI agent, acting in an undercover capacity, discovered a website called, "Lolitagurls.com," which described itself on its homepage as follows:

Lolitagurls.com offers hard to find pics! With weekly updates and high quality pics inside, you cant go wrong if you like young girls! ... Lolitas ... Full size High Quality Pictured inside Join Now—instant access here! THIS SITE updated weekly WITH NEW LOLITA pics. This site is in full compliance with United States Code Title 18 Part I Chapter 110 Section 2256.

This page also contained several images of nude and partially dressed young girls.

The visitor to the website was then directed to a second page, where the visitor could either take a free "tour" of the site, join, or sign on if already a member. This page stated,

Welcome to Lolitagurls. over one thousand pictures of girls ages 12–17! Naked Lolita girls with weekly updates! What you will find here at Lolitagurls.com is a complete collection of young girl pics. BONUS: You can get movies/mpegs at our partner site after you join if you wish. MEMBERS COMMENT ON THE SITE: "Wow! I have never seen so many good pictures of lolitas, thanks for updating often with lots of lolita girls Z ever!"—David—usa "What a site! You have the best lolita girls pics ever!" Terrance—Europe "Keep it up! This lolita site has everything with young girls!"—Eddie—Canada "These lolita pictures are first in my collection/most lolita sites cost $30 or more but you have the best!"—William—USA I was really stunned with surprise when joined your site. I've never seen in my life the pics of so cute preteen girls. But here I found an ocean of such pics!!! Thank you! "—Nikolay, Russia"

This page also contained images of young girls, some of which the affidavit described as "prepubescent," under the caption, "Lolitas age 12–17."

The undercover agent joined the site using a credit card. Membership required a monthly fee of $19.95, which was assessed automatically each month unless the member took steps to cancel the membership. Lolitagurls.com employed Lancelot Security to process credit card and membership information. Once a "member," the agent obtained a password for

---

1. The following facts are taken from the Affidavit of then-FBI Special Agent David Moriguchi in support of the search and seizure of Gourde's home computer and related property.

unlimited access to the site. Images on Lolitagurls.com were updated every twelve to twenty days, and members could download the images directly from the site to their personal computers. During the approximately three months the agent was a member, he was able to download over 100 images. The site contained adult pornography, child pornography, and child erotica. The affidavit noted that some of the images the agent downloaded depicted sexually explicit poses of naked young girls.

The FBI investigation revealed that the owner of the website was Keith Fields of Hiawatha, Iowa. The FBI executed a search warrant of Fields's home; among the items seized was Fields's computer, which contained child pornography including images that were posted on Lolitagurls.com. Fields admitted that Lolitagurls.com was a child pornography website, which he operated as a source of income.

In response to a federal grand jury subpoena, Lancelot Security provided information to the FBI regarding members of Lolitagurls.com. Among the records obtained, FBI discovered information regarding "Micah Gourde" of "Castle Rock, Washington." The records revealed that Gourde used the email address, "gilbert_95@yahoo.com," and that he listed his birth date as December 8, 1976. The membership information also indicated that Gourde had been a member of Lolitagurls.com from November 2001 through January 2002.

In addition to the facts recited above, the affidavit contained a section of definitions of terms such as "child erotica," "child pornography," "computer," "IP address," etc.; a comprehensive discussion of the logistical aspects of computer searches; a general explanation of the use of computers in the child pornography trade; and a lengthy recitation of the behavioral characteristics and methods of child pornography collectors.

The discussion regarding collectors of child pornography was based on the expertise of FBI Supervisory Special Agent James Clemente, who had worked in the FBI's Behavioral Analysis Unit since 1998. The affidavit also noted Clemente's extensive background and training in the areas of sex crime offenders and on-line sex crimes against children. The affidavit then described certain traits and characteristics that are "generally found to exist" in cases involving individuals who collect child pornography, including that the majority of child pornography collectors: (1) have a sexual attraction to children; (2) amass sexually explicit materials, including photographs, magazines, motion pictures, video tapes, books, slides, etc.; (3) "rarely, if ever," dispose of their sexually explicit materials and may go to great lengths to conceal and protect them from discovery, theft, and damage; and (4) often seek out like-minded individuals, either in person or on the Internet, to share information and trade child pornography and/or child erotica in order to gain status, acceptance and support as well as to "rationalize and validate their deviant sexual interest and associated behavior."

Following this discussion of the traits and tendencies of child pornography collectors, Moriguchi stated:

> The following facts lead me to believe that MICAH GOURDE is a collector of child pornography, and as such is likely to maintain for long periods of time a collection of child pornography and related evidence:
>
> a. GOURDE took steps affirmatively to join the website 'Lolitagurls.com', which advertises pictures of young girls and offers images of minors engaged in sexually explicit conduct.

b. GOURDE remained a member of this website for over two months, although once he gained access to the website, he could have easily removed himself from its list of subscribers. During this time, he had access to hundreds of images, including historical postings to the site, which could easily be downloaded during his period of membership.

c. Any time that GOURDE would have logged on to this website, he would have had to have viewed images of naked prepubescent females with a caption that described them as twelve to seventeen-year-old girls, yet he did not unsubscribe to this website for at least two months.

The affidavit also contained an attachment ("Attachment A") that described the items to be searched and seized, including "any computers, associated storage devices and/or other devices located therein that can be used to store information and/or connect to the Internet, for records and materials evidencing a violation of" the child pornography statutes.

b. *Proceedings Below*

Based on the affidavit in question, the magistrate judge issued a warrant to search Gourde's residence, particularizing the items to be seized as contained in Attachment A. Pursuant to the warrant, officers searched Gourde's residence and seized his computer and its contents. Upon inspection, officers discovered hundreds of images of child pornography and child erotica.

Gourde moved to suppress the evidence obtained pursuant to the search of his computer and related items. He asserted that the affidavit failed to present sufficient evidence of probable cause. The district court conducted a hearing on the motion, at which Moriguchi testified about the investigation leading up to the warrant application. He explained that the undercover agent had joined the site and was able to download images off the website consisting of adult pornography, child pornography, and child erotica. Moriguchi also discussed other aspects of the affidavit including the information pertaining to computer searches as well as the section on characteristics of child pornography collectors. He testified that he had reason to believe that evidence of a crime would be found on Gourde's computer based on the fact that Gourde had been a member of Lolitagurls.com for two months and, during that time, he had access to hundreds of images of child pornography.

The government conceded that its four-month investigation of the Lolitagurls.com website prior to applying for the search warrant gave it the means to track Gourde's actual usage of the website. Nevertheless, on cross-examination, Moriguchi admitted that the affidavit contained no evidence that Gourde had "actually downloaded, received, transmitted or in any way otherwise possessed child pornography." Moreover, Moriguchi agreed that the affidavit did not indicate when the pictures of young girls referred to in the affidavit appeared on the home or subscription page of the site. Gourde's counsel also established through his cross-examination questions that the undercover agent had little or no expertise or ability to determine the age of a person depicted in a two-dimensional image; indeed, Moriguchi conceded that the affidavit contained only the undercover agent's subjective impressions of the ages of the girls in the images. In sum, however, Moriguchi stated, "We had probable cause to believe that [Gourde] was a paid subscriber to the site that had the images on there," and that Gourde would have images on his computer based on access to a site that advertised "over 1,000 pictures of girls 12 to 17."

The district court determined that the evidence in the affidavit supported a fair probability that evidence of a crime would be found on Gourde's computer. The judge applied a "common sense approach" to conclude that evidence of a subscription to even a "mixed" site—one that offered both legal adult pornography and illegal child pornography—provided the necessary "fair probability" to "look further"; he therefore denied the motion to suppress. Upon this ruling, Gourde opted to plead guilty on the condition that he would retain the right to appeal the ruling to this court.

## II. *Discussion*

### a. *Standard of Review*

We review a motion to suppress de novo. *United States v. Jones*, 286 F.3d 1146, 1150 (9th Cir.2002). We review for clear error, however, whether the magistrate had a substantial basis for concluding probable cause existed and accord "great deference" to the magistrate's determination of probable cause. *United States v. Hay*, 231 F.3d 630, 634 n. 4 (9th Cir.2000). The magistrate's responsibility in determining whether to issue a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

### b. *Sufficiency of the Warrant*

The Warrant Clause of the Fourth Amendment provides:

No Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

The Warrant Clause therefore requires compliance with two related but distinct rules. "First, it must describe the place to be searched or things to be seized with sufficient particularity, taking account of the circumstances of the case and the types of items involved. Second, it must be no broader than the probable cause on which it is based." *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir.1990), *as amended on denial of rehearing* (internal citations and quotation marks omitted). The particularity rule requires the warrant to describe precisely those items to be seized, "since vague language can cause the officer performing the search to seize objects on the mistaken assumption that they fall within the magistrate's authorization." *Id.* (internal citations and quotation marks omitted). "The probable cause rule prevents the magistrate from making a mistaken authorization to search for particular objects in the first instance, no matter how well the objects are described." *Id.*

The search warrant at issue here was sufficiently particular. In *Weber*, we held that a warrant authorizing a search for materials depicting "minors involved in sexually explicit conduct" met the particularity requirement of the Warrant Clause. *Weber*, 923 F.2d at 1343; *see also United States v. Rabe*, 848 F.2d 994, 997–98 (9th Cir.1988) (same); *United States v. Kimbrough*, 69 F.3d 723, 727 (5th Cir.1995) (holding warrants authorizing search for materials related to child pornography to be sufficiently particular where the language properly limited the executing officers' discretion by informing them of the items to be seized); *United States v. Hall*, 142 F.3d 988, 996–97 (7th Cir.1998) (holding warrant authorizing search of suspect's home and computer to be sufficiently particular where warrant emphasized that items sought were related to child

pornography). The warrant here closely resembles those we approved in *Rabe* and *Weber*. Although the affidavit underlying the warrant sought permission to search numerous types of computer-related equipment and various storage media, the warrant limited the search to evidence depicting minors engaged in sexually explicit conduct as defined by the pertinent statutes. This description sufficiently safeguarded against the executing officers performing an unduly haphazard search.

Whether the search warrant was supported by probable cause presents a closer issue. Three of our cases are particularly instructive on this point: *Weber*, *United States v. Lacy*, 119 F.3d 742 (9th Cir.1997), and *Hay*, 231 F.3d 630. The fact-intensive nature of the probable cause inquiry demands a close look at these cases, which provide useful guideposts for determining when probable cause is sufficient and when—as in this case—it is not.

In *Weber*, we reversed the lower court's denial of the defendant's motion to suppress because the warrant lacked sufficient indicia of probable cause. *Weber*, 923 F.2d at 1346. There, customs agents seized a package at the border addressed to "P. Webber," which the agents concluded "*apparently* depict[ed] the sexual exploitation of children." *Id.* at 1340 (emphasis in original). Weber was notified of the package but did not claim it. *Id.* Customs targeted Weber for investigation and, some twenty months later, Weber was sent an undercover "test advertisement" containing the name and address of a purported distributor of sexually explicit materials in Canada, although the distributor was in fact a fictitious creation of the United States and Canada Customs Service. *Id.* The advertisement described, but did not actually display, certain pictures for sale and claimed the pictures featured "boys and girls in sex action." *Id.* (internal quo-

tation marks omitted). About a month later, Weber ordered four sets of pictures listed in the advertisement. *Id.* The pictures were to be delivered to Weber on June 12 by undercover United States Customs Service Special Agent Trevor Burke dressed as a delivery courier. *Id.*

Based on these facts, plus a general description of the proclivities of pedophiles, Burke stated in the warrant application his belief that on June 12 officers would discover not only the four sets of pictures that were to be the subject of the controlled delivery but also an extensive list of other materials depicting minors engaged in sexually explicit conduct. *Id.* at 1340–41. The description of the characteristics of pedophiles was based on Burke's experience and training in child pornography investigations as well as on his discussions with another law enforcement agent with experience in these types of crimes; however, nowhere in the affidavit did Burke conclude that Weber's sole act of ordering four sets of pictures from the fictitious catalog necessarily placed him in the category of pedophiles, molesters, or child pornography collectors. *Id.* at 1341.

We held that this evidence did not establish probable cause to search for anything but the four sets of photos Weber had ordered from the phony advertisement. *Id.* "[P]robable cause to believe that *some* incriminating evidence will be present at a particular place does not necessarily mean that there is probable cause to believe that there will be more of the same." *Id.* at 1344 (emphasis in original). For this principle, we referred to *VonderAhe v. Howland*, 508 F.2d 364 (9th Cir.1974), which involved an IRS investigation. *Weber*, 923 F.2d at 1342. After an audit revealed that a dentist's patient records adequately reflected reported income, the IRS received information from the dentist's employees

indicating that, although the records produced for the audit on white cards might have appeared in order, the dentist actually kept a secret set of records on yellow and green cards. *VonderAhe,* 508 F.2d at 366. Based on this information, the IRS agent sought a warrant to search all of the dentist's books and records, "including, but not limited to, dental patient cards." *Id.* We concluded that, although there was probable cause to believe that evidence of criminal activity might be found on the yellow and green cards, it was unlikely that the white cards would contain incriminating evidence, and thus there was no probable cause for the broader search. *Id.* at 369. Applying this principle to the *Weber* case, we concluded that the affidavit lacked probable cause to search for anything but the four sets of photos Weber had ordered from the phony advertisement. *Weber,* 923 F.2d at 1343.

We also assessed the sufficiency of a warrant application in *United States v. Lacy,* 119 F.3d 742 (9th Cir.1997). In *Lacy,* as here, the defendant utilized his computer to acquire images of child pornography. There, however, the investigation revealed and the affidavit stated that Lacy had actually downloaded at least two GIFs (a digital image format) depicting minors engaged in sexual activity from a host site, providing evidence that Lacy "actually received computerized visual depictions of child pornography." *Id.* at 745. Although we acknowledged that, under *Weber,* "[e]vidence the defendant has ordered child pornography is insufficient to establish probable cause to believe the defendant possesses such pornography," we concluded there was sufficient evidence of Lacy's actual possession via downloading of child pornography to warrant the search. *Id.*

Most recently, in *United States v. Hay,* we again emphasized the importance of evidence bearing on a defendant's actual possession of child pornography. In that case, we upheld a search warrant where the supporting affidavit established that Hay had actually received via direct digital transfer nineteen images of minors engaged in sexually · explicit activity—evidence supporting inferences that Hay had communicated with the sender, authorized the images' transfer, and possessed contraband images. *Id.* at 632–35. In addition to providing evidence of a direct and deliberate image transfer, the *Hay* affidavit provided evidence of Hay's "extreme interest in young children" by establishing that Hay's personal website described extensive· contacts with children, such as teaching skiing and swimming to preschoolers, babysitting, and working as a preschool camp counselor.

■ We conclude that this case is much more like *Weber* than *Lacy* or *Hay.* As in *Weber,* the evidence underlying the search warrant at issue here fails to draw the crucial link between Gourde's having some attenuated connection to child pornography and his actually possessing it. As noted above, the evidence presented to the magistrate included only that Gourde (1) affirmatively subscribed to an internet pornography service that advertised "over one thousand pictures of girls ages 12–17!" and displayed several thumbnail images of girls who at least appeared to be "prepubescent" on the subscription page; (2) had unlimited "access to hundreds of images, including historical postings to the site, which could easily [have been] downloaded during his period of membership" and "would have had to have viewed images of naked prepubescent females with a caption that described them as twelve to seventeen-year-old girls"; and (3) failed to unsubscribe to the site for at least two months. The affidavit also provided expert opinion evidence of the proclivities of

child pornography collectors and opined that Gourde's affirmative act of subscribing to Lolitagurls.com and failure to unsubscribe provided a sufficient basis to place Gourde in that category.

In *Weber*, we cautioned against creating a lengthy chain of inferences to buttress probable cause. *Weber*, 923 F.2d at 1344–45. Yet, in this case, concluding that Gourde actually possessed child pornography requires making several inferential leaps. In *Weber*, the government's affidavit established that, on one occasion, someone had sent what appeared to be child pornography to Weber, and that, on another occasion, Weber had responded to a reverse sting operation by ordering four images advertised in terms that implied that the images depicted child pornography. We held that these facts were not enough to establish probable cause that Weber possessed items similar to the images that he had ordered from the United States and Canada Customs Services (i.e., that he possessed a child pornography collection beyond the four pictures he had ordered).

Here, the chain of inferences that the government asks us to draw is unprecedentedly lengthy and improbable. From the fact that Gourde became a paying member of Lolitagurls.com for two months (indicating that, at a minimum, he viewed a couple of pages of the site, including a page claiming that all of the material on the site was legal, and submitted his credit card number to "join"), the government asks us to infer that: (1) the website contained actual child pornography despite the affidavit's failure to verify the age of a single person depicted on the website; (2) Gourde was aware that the images were child pornography even though a disclaimer on the first page of the website stated that the images complied with federal law; (3) Gourde did not just "look around" the website or use it for some other legal purpose, but rather actually downloaded images; (4) the images Gourde downloaded were not the legal adult pornographic images offered by the website or images that only appeared to be child pornography; and (5) Gourde retained the images from January 2002 (the last month Gourde had access to the website) until May 16, 2002 (the date of the search warrant application).

Even more so than in *Weber*, therefore, where the government asked us to infer that a defendant's ordering child pornography supported an inference that he received and retained other child pornography:

> Each of these inferences standing alone may be reasonable. But with each succeeding inference, the last reached is less and less likely to be true. Virtual certainty becomes probability, which merges into possibility, which fades into chance. The fourth amendment requires a "fair probability" that the items searched for will be found.

*Weber*, 923 F.2d at 1345. An affidavit establishing that it is possible, with some straining, to *infer* that Gourde—along with every other member of every site on the Internet containing what appears to be child pornography—might possess child pornography is not enough to justify a warrant to search Gourde's home and seize his computer. In making its probable cause decision, the district court reasoned:

> There has been discussion about the site being a mixed site. Well, does half legal make it something to destroy probable cause? What are we talking about here? Do you have to say that somebody actually saw something to believe or come to the conclusion that probable cause, or your common sense tends to indicate to you that this is why we do things. Kind of like when in a restau-

rant, I guess, you take the menu and order something we don't want to eat? Do we do that? Is that a common sense approach to things?

.... But I'm thinking, and it's my common sense thinking to me, telling me there is reason here given a fair probability, more likely than not, that this[possession of child pornography] is what this subscription was about, which means a reason to look further.

Although the district court used its "common sense" to conclude that membership alone in even a "mixed" site (a site that contained both child and adult pornography) satisfies probable cause for a search warrant, the Fourth Amendment demands more.

Indeed, both the *Hay* and *Lacy* courts emphasized that the respective affidavits at issue contained additional corroborating evidence supporting a finding of probable cause. In both *Hay* and *Lacy*, for example, we referenced evidence that the defendants had actually downloaded or received digital images depicting child pornography; and in *Hay*, we noted that Hay's website demonstrated Hay's inordinate involvement with children, which we described as Hay's "extreme interest in young children." *Hay*, 231 F.3d at 634.

Notably, the government concedes that it had the means to actually track Gourde's usage of the site to determine whether he downloaded images. It is not clear from the record, however, whether the government (1) chose not to avail itself of the information or (2) found no evidence of downloading. This uncertainty provides an important rebuttal to the argument that not finding probable cause here will inhibit the government's ability to prosecute child pornographers in the future. Simply put, there is no reason to think that the government's access to corroborating information in this case is atypical; once the gov-

ernment has gone through the motions necessary to procure a membership list (i.e., seized a website's computer and gained access to the website server), it likely also can access the necessary tracking information to demonstrate whether or not the subject of the investigation has actually downloaded child pornography. Requiring the government to buttress its affidavit with personalized information linking a website member to actual child pornography strikes a reasonable balance between safeguarding the important Fourth Amendment principles embodied in the probable cause requirement and ensuring that the government can effectively prosecute possessors and distributors of child pornography.

The government urges us to follow the Fifth Circuit's recent decision in *United States v. Froman*, 355 F.3d 882 (5th Cir. 2004); however, our decision here is not in conflict with the Fifth Circuit's precedent. In *Froman*, the court upheld a search warrant where the government provided evidence that Froman was a member of a group whose "singular goal ... was to collect and distribute child pornography and sexually explicit images of children," *id.* at 884; members of the group could choose to automatically receive emails with attached images, *id.* at 890; and the affidavit contained personalized evidence regarding Froman's interest in child pornography by way of his chosen screen names, "Littlebuttsue" and "Littletitgirly," *id.* at 891. None of these facts bearing on Froman's actual possession of child pornography is present here.

We therefore conclude that the affidavit here failed to establish a fair probability that contraband or evidence of a crime would be found on Gourde's computer. Unlike in our circuit's cases of *Lacy* and *Hay*, there was no evidence here that Gourde actually downloaded any child por-

nography from the Lolitagurls.com website; rather, much like the catalog order described in *Weber*, the affidavit here revealed only that Gourde had subscribed, and thereby received access, to a mixed-pornography website, which is insufficient to create a fair probability that evidence of possession of child pornography would be found on Gourde's computer or related equipment. Further, unlike in the Fifth Circuit case of *Froman*, there was no evidence presented to the magistrate here that a Lolitagurls.com subscription involved automatic email transmissions containing child pornography or any other evidence indicating Gourde's sexual interest in children, such as suggestive screen names.

In sum, unlike in those cases where evidence of a subscription to an exclusively child pornography website was coupled with other corroborating information, the facts presented here established only that Gourde subscribed to a mixed pornography website and remained a member for two months. These facts—even when bolstered with the boilerplate language describing the characteristics of child pornographers and Agent Moriguchi's opinion that Gourde's actions placed him in that class—fail to provide a sufficient foundation on which to establish probable cause; indeed, with each inferential leap, "[v]irtual certainty bec[ame] probability, which merge[d] into possibility, which fade[d] into chance." *Weber*, 923 F.2d at 1345. Because the Fourth Amendment requires a "fair probability" that the items searched for will be found, we cannot agree with the district court that this affidavit sufficiently established probable cause.

III. *Good–Faith Exception Under* United ed States v. Leon

■ Even if an affidavit lacks sufficient evidence on which to find probable cause,

we may nonetheless uphold a district court's denial of a motion to suppress on the good faith exception to the exclusionary rule articulated in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon*, the Court concluded that, although the exclusionary rule "effectively deters some police misconduct and provides incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Id.* at 918–19, 104 S.Ct. 3405.

■ "It is necessary to consider the objective reasonableness not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it[.]" *Id.* at 923 n. 24, 104 S.Ct. 3405. The objective standard "requires officers to have a reasonable knowledge of what the law prohibits." *Id.* at 919–20 n. 20, 104 S.Ct. 3405. An officer does not "manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 899, 104 S.Ct. 3405. However, because law enforcement officers are not lawyers and because they must often make "hurried judgment[s]," *id.* at 914, 104 S.Ct. 3405, "courts should not exclude probative evidence when officers make reasonable mistakes in obtaining a warrant." *Weber*, 923 F.2d at 1346.

In *Weber*, we concluded that no reasonable officer could believe that the affidavit there contained sufficient facts on which to base probable cause. We first emphasized that, at the time the officers applied for the warrant, the law was clear that a warrant could not be broader than the probable cause on which it was based. *Id.* We also noted that, because the law enforcement officers had planned the undercover

delivery of the four sets of photos Weber had ordered, the officers were under no time pressure to make the search. *Id.* Although we did not "question the subjective good faith of the government," we concluded that "it acted entirely unreasonably in preparing the affidavit." *Id.* Indeed, we said, when the affidavit was "stripped on the fat [the "foundationless expert testimony"], it was the kind of 'bare bones' affidavit that [was] deficient under *Leon*. . . ." *Id.*

 Here, as in *Weber*, the officers felt little or no time pressure to conduct the search of Gourde's residence. In fact, the investigating officers waited some four months to apply for the warrant of Gourde's residence after they discovered Gourde's membership information on the server, and Moriguchi conceded that no time pressure existed. Moreover, the officers had ample opportunity to analyze the server seized from the owner of Lolitagurls.com. *See Lacy,* 119 F.3d at 745 (noting that records on the seized computer server indicated that Lacy had downloaded six images off the computer server). Because the officers failed to take that step, or, alternatively, failed to present other target-specific corroborating information linking Gourde's two-month membership to a mixed child pornography/adult pornography website to his probable possession of child pornography, they acted objectively unreasonably in applying for and executing the warrant at issue.

## CONCLUSION

The district court erred in refusing to suppress the evidence seized from Gourde's computer as the affidavit failed to present sufficient indicia of probable cause. Moreover, given the completely uncorroborated evidence of probable cause, the officers acted objectively unreasonably in seeking and relying on the deficient warrant. The judgment of the district court is hereby REVERSED.

GOULD, Circuit Judge, concurring:

I concur in Judge Brunetti's excellent opinion, the logic of which is required by our precedent in *United States v. Hay,* 231 F.3d 630 (9th Cir.2000), *United States v. Lacy,* 119 F.3d 742 (9th Cir.1997), and *United States v. Weber,* 923 F.2d 1338, 1342 (9th Cir.1991). I agree with the panel opinion's persuasive application of this precedent. However, were I to examine anew the issue whether law enforcement officials had probable cause to search Gourde's room and home computer for downloaded images of child pornography, and were I free to look only at first principles and Supreme Court precedent, I would be more inclined to decide that there was probable cause for this search made upon a warrant.

Gourde took affirmative steps to subscribe for a $19.95 fee to a website whose name—"lolitagurls.com"—suggests its prurient focus on young girls. The site boasts of access to "hard to find pics" of "preteen girls," and brags that it contains "over one thousand pictures of girls ages 12–17!" It is possible that Gourde subscribed to the "mixed" site solely because it hosted some legitimate adult content. But I doubt it. The evidence collected by law enforcement officers, and submitted to the magistrate who issued the warrant, was sufficient to show a "fair probability" that if police searched Gourde's computer and room, they likely would find the contraband that they suspected lay within. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The probable cause standard does not require certainty, but only such a fair probability.

The advertised focus of this website, coupled with Gourde's willingness to pay a nontrivial fee to access the site with its

sleazy and illegal photos of young girls, tends to show, as a matter of relevance and probability, that Gourde most probably downloaded illicit images and then stored them on his computer or elsewhere in his room. All that we know about human nature tells us to a high degree of probability that a person who subscribes to a website that is illicitly hawking child pornography for a monthly fee, and who remains a paying member for two additional months, probably has taken advantage of the paid subscription by downloading images from the site.[1] This is especially true in light of the fact that the administrator of "Lolita-gurls.com" constantly refreshed the website with new photographs. And evidence submitted supporting the search warrant attested to the tendency of those addicted to child pornography to retain on their computers illicit materials once obtained.[2] The evidence supporting the search warrant showed that consumers of child pornography operate somewhat like pack rats, hoarding what they find.

Were one to examine this case without the constraint of our precedent, instead using only the Supreme Court's "fair probability" standard in the general probable cause context, in my view it would be permissible to conclude that law enforcement officials had adequate cause to gain the warrant to search Gourde's computer and room. *See, e.g., Graves v. City of*

*Coeur D'Alene,* 339 F.3d 828, 841 (9th Cir.2003) ("Probable cause means more than a bare suspicion ... but less than absolute certainty that [a] search will be fruitful."); *United States v. Garcia,* 179 F.3d 265, 269 (5th Cir.1999) ("the requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark."); *United States v. Travisano,* 724 F.2d 341 (2d Cir.1983) (upholding a search of a suspect's residence and car because "the standard of probable cause cannot imply 'more probable than not'"; all that is required is "a fair probability that the premises will yield the objects specified in the search warrant."); *United States v. Melvin,* 596 F.2d 492, 495 (1st Cir.1979) (rejecting bomb suspect's argument that "probable cause" can be "define[d] ... mathematically to mean 'more likely than not'"; "The phrase is less stringent than that. The words 'reasonable cause' are perhaps closer to what is meant."). A magistrate could reasonably conclude that a person such as Gourde would not likely pay money monthly for access to child pornography unless he expected to collect and preserve the unlawful images for later use.[3]

We should not require a more rigorous probable cause test for suspected evidence of possession of child pornography on the mistaken theory that child pornography is a victimless crime. To the contrary, we are gravely aware of the necessarily pred-

---

1. Had the government not commenced its sting operation two months after Gourde paid for his automatically renewable subscription, there is no telling how long Gourde would have remained a registered member of the site, or how long he would have consumed and kept its illegal contents. In any event, longer duration of access to the site for more than two months is not necessary to give confidence that Gourde downloaded and retained illicit materials.

2. As the affidavit of the FBI agent reveals in Gourde's case, child pornography collectors are likely to amass materials without disposing of them, in part because they tend to trade information online with other child pornography collectors.

3. Further, "while we insist that probable cause be shown, we give great deference to the decision of the magistrate who concludes that such a showing has been made." *United States v. Fried,* 576 F.2d 787, 791 (9th Cir. 1978) (internal quotation marks omitted).

atory nature of the child pornography market and those who traffic in it, as well as the dangerous effects of its proliferation. As I have expressed in the past, child pornography is not at all a victimless crime. *See United States v. Joyce*, 357 F.3d 921, 930 (9th Cir.2004) (Gould, J., dissenting) ("We must recognize that the possession of child pornography, even by one who is not a purveyor, is harmful to child victims because it facilitates the illicit demand that leads to the exploitation and degradation of children for the benefit of child pornographers and those to whom they cater."). To the extent that our legal system impedes legitimate law enforcement efforts to cut off the demand and thereby affect the supply of child pornography, we do a disservice to one of the most vulnerable segments of our society.

It is too bad that the Ninth Circuit's prior precedents on searches for child pornography impose a more rigorous test for probable cause than that called for by common sense and common experience, and in my view more than should be required under the Supreme Court's precedent of *Illinois v. Gates*. I join the court's well-reasoned opinion under compulsion of our precedent in *Weber*, contrasted with *Hay* and *Lacy*. But it would be better if we rethought and reformulated the requirements of our circuit law.