UNITED STATES of America,
Plaintiff,

v.

Lyman WAGERS, Jr., Defendant.

No. CRIM.A. 04–66–S.

United States District Court,
E.D. Kentucky,
At Lexington.

Oct. 12, 2004.

Mark A. Wohlander, U.S. Attorney's Office, EDKY, Lexington, KY, for USA, Plaintiff.

Larry Roberts, Roberts & Smith, Patrick F. Nash, Lexington, KY, for Lyman E. Wagers, Jr. (1), Defendants.

## MEMORANDUM OPINION AND ORDER

FORESTER, Chief Judge.

This matter is before the Court for consideration of the Defendant Lyman Wagers, Jr.'s (hereafter, the "Defendant" or "Wagers") Motion to Suppress certain evidence discovered pursuant to the execution of three (3) search warrants at his residence, his business and America On–Line's corporate headquarters regarding his account [DE # 30]. The United States has filed a Response to the Motion to Suppress [DE # 34], the Defendant replied [DE # 36], and the government submitted a Sur–Reply. [DE # 37] Concurrent with his reply, Wagers also filed a Motion for leave to place evidence in the record absent a stipulation [DE # 36], to which the United States responded. [DE # 37] Accordingly, the motions are now ripe for adjudication.

### I. BACKGROUND

Previously, the United States submitted three (3) Applications and Affidavits for Search Warrants regarding an investiga-

tion into Mr. Wagers' alleged criminal wrongdoings involving child pornography. Specifically, the United States sought to search the residential and business premises of Mr. Wagers at 3818 Mimosa Lane, Lexington, Kentucky and 1608 Harrodsburg Road, Lexington, Kentucky on April 5 and 8, 2004, respectively. [*See* April 5, 2004, Application and Affidavit For Search Warrant, hereafter the "April 5th Affidavit", and April 8, 2004 Application and Affidavit For Search Warrant, hereafter the "April 8th Affidavit".] The United States also filed an application for search warrant for searching records involving Mr. Wagers at America On–Line's (AOL) headquarters in Dulles, Virginia, on April 8th. [*See* the April 8, 2004, Application and Affidavit For Search Warrant of AOL Headquarters, hereafter the "AOL Affidavit".] Based on these applications and affidavits, and after finding probable cause had been established, Magistrate Judge James B. Todd signed each application and issued search warrants on the corresponding dates the warrants were submitted.

Wagers now challenges the sufficiency of those affidavits in the instant Motion to Suppress. Through his motion, Wagers argues that the evidence seized pursuant to three (3) search warrants should be suppressed because: (1) they do not create probable cause to believe that Mr. Wagers committed any crime; and (2) they do not create probable cause to believe that instrumentalities or evidence of a crime would have been found at the premises to be searched. For the reasons stated herein, Wagers' Motion to Suppress will be DENIED.

## II. *LEGAL STANDARD*

The Fourth Amendment to the United States Constitution provides:

> No Warrants shall issue, but upon probable cause, supported by Oath or affir-

mation, and particularly describing the places to be searched, and the person or things to be seized.

U.S. Const., Amend. IV. Wagers does not challenge the "particularity" of the affidavits; rather, he contests the sufficiency of the "probable cause" for the issuance of said search warrants.

■■■■ To be sufficient, the affidavits must establish probable cause to believe that evidence of the alleged crimes would be present at the three premises searched. *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir.1991). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion," *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990), and is said to exist "when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Davidson*, 936 F.2d at 859; *see also, e.g., United States v. Johnson*, 351 F.3d 254, 258 (6th Cir.2003). In reviewing the sufficiency of a search warrant affidavit, the "magistrate's determination of probable cause is afforded *great deference*," and should only be reversed if arbitrarily made. *United States v. Greene*, 250 F.3d 471, 478 (6th Cir.2001) (emphasis added); *United States v. Finch*, 998 F.2d 349, 352 (6th Cir.1993). To this end, "review of an affidavit and search warrant should rely on a 'totality of the circumstances' determination, rather than a line-by-line scrutiny." *Greene*, 250 F.3d at 479. In other words, the magistrate judge's responsibility in examining the challenged search warrant is "simply to make a *practical, common sense decision* whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103

S.Ct. 2317, 76 L.Ed.2d 527 (1983) (emphasis added).

■■■■ "It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Feldman,* 606 F.2d 673, 679 n. 11 (6th Cir.1979). "When reviewing the denial of a motion to suppress evidence, we must consider the evidence in the light most favorable to the government." *United States v. Garza,* 10 F.3d 1241, 1245 (6th Cir.1993). The standard of review for determining the sufficiency of the affidavit "is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir.1991). *See U.S. v. Rodriguez–Suazo,* 346 F.3d 637, 643 (6th Cir.2003).

## III. *ANALYSIS*

### A. *The Affidavits In General*

Prior to the initiation of the instant criminal action, as ascertained from the averments contained in the supporting affidavits, a number of police and investigatory agencies, including the United States Attorney's Office for the District of New Jersey, the United States Department of Justice's Child Exploitation and Obscenity Section, the New Jersey offices of the ICE, Internal Revenue Service, Criminal Investigations Division, the United States Postal Inspection Service, and the Federal Bureau of Investigations, conducted a joint investigation into the business known as Regpay, a third party billing and credit card aggregating company. [*See* April 5th Affidavit, ¶¶ 10–23; April 8th Affidavit, ¶¶ 10–23; AOL Affidavit, pp. 1–2.] Through this independent investigation, the foregoing agencies discovered that Regpay was conspiring with other website operators to commercially distribute child pornography by providing those other site operators with billing and credit card aggregating services. *Id.* The investigation also revealed that Regpay received a percentage of the website operator's revenues and also operated its own website(s) that sold child pornography. [*See* April 5th Affidavit, ¶¶ 10–12; April 8th Affidavit, ¶¶ 10–12.]

The agencies' undercover agents purchased a membership and visited several sites serviced by Regpay. *Id.* Between February and September 2003, the agents verified that at least 21 websites that were serviced by Regpay were still accessible, active and contained child pornography. Critically, the instant affiant admitted that the agents had no way of ascertaining the actual contents of each website on the various dates customers actually visited the websites in March, July and August 2003. [*See* April 5th Affidavit, ¶ 14; April 8th Affidavit, ¶ 14.] Yet, the agents were able to verify that, on the dates they visited the various sites, the sites contained child pornography, as defined by federal law. *Id.* The affidavits contain detailed explanations of the process used by federal agents to secure the computers and databases used by Regpay and Iserve, as well as how the agents retrieved member data from those databases subsequent to the seizure of the various suspect computer equipment. [*See* April 5th Affidavit, ¶¶ 10–23; April 8th Affidavit, ¶¶ 10–23.] Wagers does not contest the factual accuracy of the underlying investigation.

Importantly, as will be demonstrated herein, the affidavits clearly attest that "there is probable cause to believe that evidence, fruits, and instrumentalities of violations of federal law, as set forth [in the affidavit] will be located at the SUBJECT PREMISES." [*See* April 5th Affi-

davit, ¶ 7; April 8th Affidavit, ¶ 7. *See also* AOL Affidavit, p. 6 (stating probable cause to believe that Wagers used his AOL account to receive child pornography.)] The financial records from both Regpay, or one of its associated companies like Iserve, and Mr. Wagers' credit/bank card companies, American Express and Visa/Bank One, obtained by subpoena, confirm purchases of subscriptions by Wagers to three (3) different websites that contain(ed) child pornography. [*See* April 5th Affidavit, ¶¶ 30–31, 36–41; April 8th Affidavit, ¶¶ 30–31, 36–41.] Records from Insight Communications, Wagers' internet broadband provider, also obtained by subpoena, confirm that three (3) websites containing child pornography were accessed from the IP address assigned by Insight to Mr. Wagers. [*See* April 5th Affidavit, ¶¶ 32–35; April 8th Affidavit, ¶¶ 32–35; AOL Affidavit, p. 4–6.] Further, the AOL user name purchased and used by Wagers, *Spike20004u@aol.com,* was paid for with the same Visa/Bank One check card used to pay for access to websites containing child pornography. [*See* April 5th Affidavit, ¶¶ 28–31; April 8th Affidavit, ¶¶ 28–31; AOL Affidavit, pp. 3–4.] That card is registered to Mr. Wagers.

Mr. Wagers' subscriptions to the three sites at issue apparently expired prior to the undercover agents accessing and viewing each subject website. [*See* DE # 30, pp, 2–3, 5–6.] Specifically, the agents viewed the "Red Lagoon" website 8 months after Mr. Wagers' subscription expired; the agents accessed the "Video-2000" site a month after Wager's subscription expired; and the agents viewed the "Dark Feeling" website about 2 months after his subscription expired. *Id.* Wagers makes much ado about the fact that the affidavit does not, however, state that the suspect websites contained pornographic material for the periods of time during which Wagers held subscriptions to these sites. Nevertheless, as explained below, this failure is neither dispositive nor affective of the instant motion, especially considering case law regarding the retention of child pornography on people's computers.

Turning to Wagers' motion, the Defendant points out that the affidavits at issue are

> devoid of any proof that child pornography was offered on these websites when Mr. Wagers held his subscriptions, devoid of any information that Mr. Wagers utilized these websites after purchasing his subscriptions, devoid of any information that if he did use them, he viewed illegal rather than legal portions of the websites, devoid of any information that Mr. Wagers downloaded anything from these websites, and devoid of any information that, if downloading was performed, the fruits of such downloading were still in the possession of Mr. Wagers at the subject premises.

[DE # 30, pp. 2–3] Primarily, Wagers argues that the agents, as evidenced by the affidavits, had no evidence that the subject websites contained child pornography when he was a member of the subject websites or that he accessed, viewed images on or downloaded anything from those sites. He also contends that the affidavits are incorrect insofar as they state that the "customer transaction records indicate that four of the member-only sites purchased by [him] permitted electronic access to child pornography," when there is no such proof that they did so at the time of his subscriptions. However, Wagers attacks what he *claims* the affidavits lack rather than focusing on what they actually contain and assert. He admits that the investigation correctly ascertained that he had purchased subscriptions to the three suspect websites through Regpay's and/or Iserve's billing service.

Wagers also argues that the affidavits require the agents and magistrate judge to stack inferences in finding "probable cause." Specifically, he relies upon a recent Ninth Circuit opinion, *U.S. v. Gourde*, 382 F.3d 1003 (9th Cir.2004). That case, however, is distinguishable on the facts. First, it is not binding precedent in this Circuit. Second, the government agents in that case could have, but did not, track the defendant's actual usage of the suspect child pornographic website. Critically, and perhaps most importantly, the suspect affidavit in *Gourde* did *not* contain any allegations that Gourde had actually downloaded, received, transmitted or otherwise possessed child pornography and did not attest to the dates of the various images accessed by the agents. *Id.* at-. As discussed below, and set forth in the affidavit in the case *sub judice,* the attesting officer undoubtedly averred that probable cause existed for finding images of child pornography in various forms. [Affidavit, ¶ 53]

### B. *Mimosa Lane and Harrodsburg Road Affidavits*

Wagers argues that the April 5th Affidavit sets forth no factual allegations connecting his Mimosa Lane residence to the website subscriptions. He states that the Red Lagoon subscription, purchased in June 2002, and lasting for 1 to 2 months, expired before he obtained internet access at Mimosa Lane on October 9, 2002. This claim, as demonstrated below, is, without question, false—he obtained internet access with AOL a year and a half before his first suspect-website subscription, in November 2000. He also contends that the other three subscriptions, to the Dark Feeling and Video–2000 wesbites, were made with a check card with the billing address of 1608 Harrodsburg Road. Thus, according to him, there is no connection to the Mimosa Lane premises in the Mimosa Lane Application and Affidavit. Based on

his arguments regarding the April 5th Affidavit, Wagers would have the Court conduct a line by line scrutiny of the suspect affidavits. This is clearly contrary to the law in this Circuit. Rather, the Court must look at the "totality" of the circumstances surrounding the affidavit and search warrant. *Greene,* 250 F.3d at 479.

Wagers, however, does not explicitly address whether the April 8th Affidavit regarding the business at Harrodsburg Road sets forth sufficient facts supporting probable cause for the issuance of the affidavit. Even though he has not addressed this issue, the Court will, out of an abundance of caution, review this affidavit as well.

■ It is undisputed that the individual using the *Spike20004u@aol.com* email address between June 30, 2002, and June 3, 2003, reported two addresses: 1608 Harrodsburg Road (a billing address) *and* 3813 Mimosa Lane (a supplemental address). It is also clear that this account was registered to Wagers starting in November 2000. Further, the agents' independent investigation revealed that 3813 Mimosa Lane is Mr. Wagers primary residence according to public records databases. Additionally, Wagers established that AOL account in November 2000, *nearly two years prior* to the first alleged wrongdoing. When he established his AOL account, Wagers also gave his night time phone number as 859–271–3484, which is listed for the residence at 3813 Mimosa Lane, and his day time number as 859–276–0594, his business phone. Furthermore, the Insight Communications billing address for Wagers' broadband account, which was activated on October 9, 2002, *prior* to the alleged use of two of the three websites, lists his billing address as 3813 Mimosa Lane. It is also undisputed that Wagers had the AOL account billed to the Harrodsburg Road address. He also list-

ed both the Harrodsburg Road and Mimosa Lane locations on his Insight broadband connection. Every time Wagers subscribed to one of the three websites at issue, he used the foregoing AOL email account. Clearly, Wagers' connections to the internet were inextricably intertwined between the two addresses and the affidavits sufficiently set forth facts demonstrating this.

It is well-known that in today's "electronic" and "computer" age, many individuals, especially those engaged in professions mandating the use of computer technology, such as accountants, have computers both in an office and at home. It is also a well-known fact, and cannot honestly be disputed, that individuals often access their email and/or internet from both work and home. Here, the IP address in the customer transaction records from Video–2000 and Dark Feeling reflect that said IP address was assigned to Wagers during the same period in which he accessed the suspect websites. Unfortunately, web IP addresses do *not* *directly* reflect the geographic street address of the office, residence, or building from which an individual accesses his email and/or the internet. Instead, law enforcement officials must conduct research and rely upon the addresses and data provided by internet providers, such as AOL and Insight Communications, as well as billing addresses for those service providers and/or credit card companies. Yet, the IP address assignment, namely to Wagers, is most telling in regards to

which individual (Wagers) used it to access the sites containing the suspect material.

Additionally, the issue is not whether those websites have both "legal" and "illegal" pages to access, as Wagers contends in his brief;[1] the issue is whether there is "probable cause" to believe that evidence, fruits or instrumentalities of criminal activity may be found at the suspect premises. Mr. Wagers has a prior conviction relating to child pornography, which he does not dispute. He clearly had access to the internet from *many* locations, not just the Mimosa Lane and Harrodsburg Road locations, through his AOL account. Yet, his residence and business locations are certainly the most likely and suspect locations through which he would have accessed the internet. The question, then, is not whether he did or did not access child pornography through the suspect sites from those physical addresses, but, rather, giving the Magistrate Judge's decision great deference, whether there is a "fair probability" that evidence or fruits of criminal wrongdoing would be found. Clearly, the websites permitted access to child pornography. Mr. Wagers subscribed to the websites at various times and had internet access accounts from his home on Mimosa Lane and his business on Harrodsburg Road.

Furthermore, unlike the affiant in *Gourde*, the attesting officer undoubtedly averred that he believed child pornography could be found at the Defendant's residence and/or business. [Affidavits, ¶ 53]

---

1. In any event, Wagers' contention on this point is without merit. Specifically, although he argues that the alleged sites contain both "legal" and "illegal" content, the United States submitted screen shots from both the DarkFeeling and RedLagoon websites that contain exact and precise language indicating "[a]ll models are 14 and younger." [*See* DE # 37, Exs. A and B.] Thus, while those sites *may* contain "legal" material, which the United States concedes, two of the three websites at issue explicitly advertise and market that the materials, and specifically the pornography, contained on those sites are illegal in nature. This evidence lends further support in the finding of probable cause made by the Magistrate Judge.

In child pornography cases, courts have repeatedly recognized that collectors of child pornography tend to retain their materials, and this Court agrees—it is probable that Mr. Wagers, having visited several websites known to have child pornography accessible on them, would have images, files, and/or electronic data evincing his downloading, possessing, viewing, accessing, or distributing child pornography. *See, e.g., United States v. Cox,* 190 F.Supp.2d 330, 333 (S.D.N.Y.2002). A host of district court decisions reflect rulings denying motions to suppress concerning child pornography searches several months *after* the alleged viewing or downloading of child pornography. *See United States v. Lamb,* 945 F.Supp. 441, 460 (N.D.N.Y.1996). *See also United States v. Ricciardelli,* 998 F.2d 8, 12 n. 4 (1st Cir. 1993) (stating that "history teaches that collectors [of child pornography] prefer not to dispose of their dross, typically retaining obscene materials for years"); *United States v. Hay,* 231 F.3d 630, 633–36 (9th Cir.2000), *cert. denied,* 534 U.S. 858, 122 S.Ct. 135, 151 L.Ed.2d 88 (2001) (finding probable cause to believe child pornography would be found in defendant's computer *despite passage of six months* from single transmission of nineteen computer graphic files containing child pornography to defendant's computer). *U.S. v. Shields,* 2004 WL 832937 (M.D.Pa.2004).

Additionally, there is no need to make "inferences upon inferences" in this case, as the Court found in *Gourde.* Specifically, the only inference to be made herein is that the Defendant accessed child pornography on the websites at issue at some point. It is clear that he had internet access through either an AOL account or Insight's broadband connection; he had previously been convicted on child pornography charges; his internet connections were firmly attached through his home and/or business; he purchased several subscriptions at varying times to the websites at issue; and those websites, at various points in time, contained various child pornographic material. As a result, this case is clearly distinguishable from *Gourde,* because of the level of specificity contained in the affidavit supporting the search warrant.

Accordingly, it is reasonable to conclude and fairly probable that both the Mimosa Lane and Harrodsburg Road premises are reasonably connected to the viewing and/or accessing of the suspect websites. In other words, in the words of the Sixth Circuit, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Rodriguez–Suazo,* 346 F.3d 637, 644 (6th Cir.2003) (citations omitted). Based on the foregoing factors, the Magistrate Judge "had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited," both the Mimosa Lane residence and the Harrodsburg Road office. *See United States v. Davidson,* 936 F.2d 856, 859 (6th Cir.1991). The four corners of the affidavit, thus, support a finding of probable cause.

Thus, the Magistrate Judge made a simple, "practical, common sense decision [that] given all the circumstances set forth in the affidavit[s] before him ... there [was] a fair probability that contraband or evidence of a crime will be found" at both the Mimosa Lane residence and the Harrodsburg Road office. *See Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. 2317. Wagers indisputably subscribed to at least three (3) websites containing illegal child pornography and this, in combination with the other factors set forth in the affidavits

and discussed herein, unquestionably satisfies the probable cause requirement. *See U.S. v. Bailey,* 272 F.Supp.2d 822, 824–25 (D.Neb.2003) (holding that "knowingly becoming a computer subscriber to a specialized internet site that frequently, obviously, unquestionably and sometimes automatically distributes electronic images of child pornography to other computer subscribers alone establishes probable cause for a search of the target subscriber's computer even though it is conceivable that the person subscribing to the child pornography site did so for innocent purposes and even though there is no direct evidence that the target subscriber actually received child pornography on his or her computer."). Giving Magistrate Judge Todd the great deference required by the Supreme Court, probable cause existed for the issuance of the search warrants at issue on the two Lexington premises. *See U.S. v. Payne,* 341 F.3d 393 (5th Cir.2003.) ("While the generalization alone might be insufficient to render official reliance reasonable, other facts in the affidavit taken together with generalizations founded upon training and experience could support reasonable reliance. Other facts in the affidavit lend support to the inference that evidence of child sexual exploitation might be discovered in Payne's home. We conclude, considering the affidavit and the circumstances surrounding issuance of the warrant, that the good faith exception applies"). *United States v. Froman,* 355 F.3d 882, 891 (5th Cir.2004) (holding that it is common sense that a person who voluntarily joins a website containing child pornography, even one who maintains a membership for as little as one month, would download such pornography from the website and have it in his possession).

▮ In any event, even if probable cause was not established from the four corners of the affidavits, the "good faith" exception set forth in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), would be applicable herein and render the searches valid. In a case discussing this exact issue, *United States v. Rice,* 358 F.3d 1268 (10th Cir. 2004), the defendant appealed the denial of his motion to suppress. He argued that the affidavit did not specify how the sexually suggestive websites listed in the affidavit were linked to emails and that it did not indicate that he actually ever visited those websites or obtained or possessed anything which was in fact child pornography. *Id.* at 1274. The district court held that the affidavit provided the magistrate judge with sufficient information from which he could reasonably conclude there was probable cause to believe that evidence of child pornography would be found at the defendant's residence. *Id.* The trial court also held that, even if the affidavit failed to establish probable cause, suppression was unnecessary because the agents executing the warrant acted in objectively reasonable, good-faith reliance on the warrant. *Id.* The affidavit in question, similar to the ones at issue in this case, stated that several sexually explicit emails had been received by an individual with a certain AOL email account, *riceone2000@aol.com,* and that said user name belonged to the defendant. *Id.* The emails also clearly provided access to websites providing child pornography, like the websites at issue herein did. Even though the affidavit did not state that the defendant accessed those pages containing the child pornography, the Court ultimately affirmed the trial court under the good faith exception set forth in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Rice,* at 1274. These facts seem very analogous to the instant action and this "good faith" exception would remedy any failings in the April 5th or April 8th Affidavits.

### C. *AOL Affidavit*

█ Finally, concerning the AOL Affidavit, Wagers contends that the AOL affidavit does not connect the premises to be searched with the crimes to be investigated. He avers that this affidavit does not reference his usage of email and that it is fatally deficient in connecting the alleged wrongful activity with the items to be searched. He also complains that there is insufficient nexus between the place to be searched and the evidence sought.

Contrary to Wagers' assertion, he used his AOL screen name and account to establish accounts with at least three (3) suspect websites containing child pornography. This account was also used to access two (2) additional websites. The April searches at his residence and business resulted in the seizure of files evincing that Wagers had used AOL instant messenger to receive, share, and/or download child pornography files. The affidavit sought information pertaining to AOL's business records, including log files, electronic images, screen names and account information, *not only email records,* that would reflect evidence of criminal activity related to the foregoing facts.

Because Wagers had an account with AOL for 3 years, and had used his screen name and account in the manner previously discussed, as well as the fact that AOL provides email, file and messenger services. through which an individual can access the. internet and share files, the AOL affidavit seems sufficient to establish probable cause for the search of those premises and the data sought. *See United States v. Sassani,* 139 F.3d 895, 1998 WL 89875 at *6 (4th Cir.1998) (unpublished) (recognizing that a review of relevant federal cases makes clear that courts routinely find search warrants allowing seizure of a computer and all its associated printing, storage, and viewing devices constitutional in child pornography cases because these items "not only may contain evidence of distribution of child pornography, but are also the instrumentalities of the crime.") Accordingly, the Court finds Wagers' arguments concerning the AOL Affidavit unconvincing as well.

## IV. MOTION FOR LEAVE

Concurrent with his Reply to the Motion to Suppress, Wagers filed a Motion for Leave to place evidence in the record absent a stipulation. [DE # 36] However, this request was merely included in the styling of his reply brief and he devotes a mere sentence to it in his brief. Specifically, he asks that if the United States contests that the websites contained legal and illegal material, he should be able to put evidence in the record indicating that the websites contained both legal and illegal material at the time be viewed those sites. However, Wagers does not cite any authority or otherwise explain what this evidence would be or consist of. In any event, for the reasons stated in footnote 1, *supra,* this request would be without merit. Thus, Court will deny this motion as well. *See also* LCrR 12.1.

## V. CONCLUSION

Based on the foregoing facts and case law, the Court finds that the Defendant has not sustained his burden of proof as required by *United States v. Feldman.* Reviewing the evidence in the light most favorable to the government, *United States v. Garza,* the affidavits sufficiently show probable cause on their face and the motion will be denied. Further, the affidavits being sufficient on their face, there is no need for an evidentiary hearing in this case.

Accordingly, for the reasons enumerated in this Memorandum Opinion, and the

Court being otherwise sufficiently advised, it is hereby ORDERED that:

(1) No evidentiary hearing is necessary in this matter;

(2) The Defendant's Motion To Suppress [DE # 30] is DENIED; and

(3) The Defendant's Motion for Leave to place evidence in the record absent a stipulation [DE # 36] is DENIED.