942 So.2d 5 (2006)
STATE of Florida, Appellant,
v.
Victor FELIX, Appellee.
No. 5D05-3748.
District Court of Appeal of Florida, Fifth District.
October 6, 2006.
Rehearing Denied November 16, 2006.
*7 Charles J. Crist, Jr., Attorney General, Tallahassee, and Robin A. Compton, Assistant Attorney General, Daytona Beach, for Appellant.
William J. Sheaffer of William J. Sheaffer, P.A., Orlando, for Appellee.
MONACO, J.
The State of Florida seeks review of an order of the trial court granting the motion of the appellee, Victor Felix, to suppress the evidence of child pornography seized from his residence, and in particular, from his computer located within the residence, during a search by law enforcement officers pursuant to a search warrant. The trial court suppressed the evidence because it concluded that the affidavit supporting the search warrant failed to provide a sufficient basis upon which to find probable cause for issuance of the warrant. We conclude, however, that the warrant was properly issued and reverse.
The investigation of the alleged activities of Mr. Felix began when an officer of the Maryland State Police established a website to attract persons interested in child pornography as part of a child exploitation task force. In order to access the website, its message boards and its chat rooms, internet users would first have to send three images of child pornography. According to the Maryland officer, a person with the Yahoo! screen name, truebrother 999@Yahoo.com, contacted the website on April 16, 2004, and sent an email containing three digital images depicting very graphic child pornography. The Maryland officer investigated the Internet Protocol address associated with the Yahoo! user, and discovered a profile listing Orlando, Florida, as the user's address, and discovered, as well, a photograph of the user. Maryland eventually issued a subpoena to Bright House Networks, and subsequently discovered that truebrother999 was the appellee, Victor Felix III, who according to his Florida driver's license, resided in Orange County.
The Maryland authorities contacted the Orange County Sheriff's Office on September 10, 2004, which forwarded the information that it had received concerning Mr. Felix to a detective within the Orlando Police Department. The detective discovered that Mr. Felix had moved to a different address than the one listed on his driver's license. He also examined the internet profile associated with Mr. Felix, and found that the photograph included in the profile matched the picture on Mr. Felix's driver's license.
The detective eventually completed an affidavit in support of a search warrant based, in part, on this information. In addition to reciting these facts, the affidavit included the detective's background and experience, as well as a list of characteristics and tendencies that he identified as those common to "preferential child molesters." The detective indicated that he had been with the Orlando Police Department since 1989, and had worked in the Crimes Against Children Unit since 1993. *8 The affidavit further related that the detective had personally investigated 1,200 cases involving physical and sexual abuse of children, and had taken courses involving physical and sexual abuse and exploitation of children, including classes entitled "Child Exploitation Via the Computer" and "Advanced Training on Preparing Search and Seizure Warrant for Crimes Against Children." Through the Florida Department of Law Enforcement, the detective was certified to conduct basic and advanced training on the physical and sexual abuse and exploitation of children, and had conducted such training at the Orlando Police Department, the Citizen's Police Academy, and at Orange County Public Schools. He had, according to the affidavit, also appeared on local and national television to discuss physical and sexual abuse and exploitation of children, and held membership in such organizations as the Florida Sex Crimes Investigators Association and the Central Florida Child Exploitation Task Force.
On September 29, 2004, about five and one-half months after the three images of purported child pornography were transmitted to the Maryland officer, law enforcement authorities in Orange County successfully sought a warrant from a circuit judge to seize Mr. Felix's computer and any other equipment or accessories that contained child pornography, or anything that would identify juvenile victims or witnesses to any illegal acts of abuse by Mr. Felix. The search warrant was executed a week later, and resulted in the police officers finding in excess of one hundred images of alleged child pornography on Mr. Felix's computer. Mr. Felix was subsequently charged by information with 103 counts of Unlawful Possession of Materials Depicting Sexual Performance by a Child, in violation of section 827.071(5), Florida Statutes (2005).
Mr. Felix filed a motion to suppress. Without conducting an evidentiary hearing, the trial judge concluded that the search was violative of the Fourth Amendment, and granted the motion. The basis for the suppression was two-fold. First, the court determined that the information within the affidavit was stale. Second, the court concluded that the affidavit did not set forth crime specific facts to support the likelihood that the computer used to send the images would be in Mr. Felix's home. The court did note, however, that the inclusion of the detective's experiential and expert data within the affidavit was appropriate, and that "the affiant had the experience and expertise to believe the facts in his affidavit." The State seeks review of the suppression order.
Since the trial court based its decision to grant the motion to suppress solely on an examination of the affidavit, and without an evidentiary hearing, the issue of whether the State established probable cause sufficient to obtain a search warrant presents a question of law that is reviewable using a de novo standard. See Pagan v. State, 830 So.2d 792 (Fla.2002), cert. denied, 539 U.S. 919, 123 S.Ct. 2278, 156 L.Ed.2d 137 (2003); State v. Paige, 934 So.2d 595 (Fla. 5th DCA 2006); Martin v. State, 906 So.2d 358 (Fla. 5th DCA 2005). Using that standard, and giving, as we must, "great deference" to the issuing judge's determination that probable cause existed (provided there is a substantial basis for the determination), we conclude that the trial court erred in granting the motion to suppress. See United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
Article I, Section 12 of the Florida Constitution requires that a search warrant be supported by a sworn affidavit, and that the search be in conformity with the Fourth Amendment to the United *9 States Constitution. In issuing a search warrant a magistrate looks only within the four corners of the affidavit and must find based on that affidavit that a reasonable probability exists, given the totality of the circumstances and a common sense assessment, that evidence of a crime will be found at the place to be searched. Salyers v. State, 920 So.2d 747, 749 (Fla. 5th DCA 2006). In order to establish probable cause to issue a search warrant, the affidavit must show: (1) that a particular person has committed a crime (the "commission element"), and (2) that evidence of the probable criminal activity is likely to be found at a particular location to be searched (the "nexus element"). Id. at 749; see also State v. Jenkins, 910 So.2d 934, 936 (Fla. 2d DCA 2005) (an affidavit in support of a search warrant must contain a commission element and a nexus element).
The first basis for the trial court's suppression of the fruits of the search in the present case was that the information contained in the affidavit supporting the warrant was stale. The period that had elapsed between the transmission of the three images to the officer in Maryland and the execution of the search warrant in Orlando was about five and one-half months. Although the issuing magistrate obviously felt that this elapsed time was not excessive, the trial judge concluded that information that old was legally stale. While we certainly understand the position adopted by the trial judge, we think the magistrate got it right.
It is well-accepted, of course, that an affidavit must establish the particular time when the illegal activity that is the subject of the warrant was observed. See Jenkins, 910 So.2d at 937. A magistrate is required to know this specific time because the length of time between the activity and the date of issuance bears on whether there is probable cause to believe that the items to be seized will still be found at the place to be searched. Id. The longer the time period, the less likely it is that the items sought to be seized will be found at the place listed in the affidavit. Id. As the time period increases, it is said that the evidence becomes stale. A rule of thumb that seems to be recognized by courts as the standard for staleness is thirty days. Fletcher v. State, 787 So.2d 232, 234 (Fla. 2d DCA), review denied, 796 So.2d 537 (Fla.2001). There is nothing particularly magical about thirty days, however. As our sister court in the Fourth District has indicated, "whether information is too stale to establish probable cause to support a search warrant is not to be determined solely by the rigid application of a pre-determined time period." Cruz v. State, 788 So.2d 375 (Fla. 4th DCA 2001). Depending on the particularized circumstances as evaluated by an impartial magistrate, an acceptable elapsed time may certainly be more or less than thirty days. A specific lapse of time is not controlling on the issue of staleness and does not invariably render a search warrant stale. Brachlow v. State, 907 So.2d 626, 629 (Fla. 4th DCA 2005). We have judges making this determination because it requires an exercise of judgment.
Staleness should be evaluated in light of the particular facts of a given case, the nature of the criminal activity, and the evidence hoped to be found. United States v. Lacy, 119 F.3d 742, 745 (9th Cir.1997), cert. denied, 523 U.S. 1101, 118 S.Ct. 1571, 140 L.Ed.2d 804 (1998). Information contained in an affidavit in support of a search warrant is not stale if "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." Id. at 746. Similarly, items that are consumable, such as proscribed drugs, for example, may become stale *10 sooner than non-consumable items such as video tapes. See Brachlow, 907 So.2d at 629.
Of particular interest for purposes of the analysis of the present case is the opinion of the United States Court of Appeals for the Ninth Circuit in Lacy. There, the Court of Appeals upheld a defendant's conviction for possessing child pornography despite a search warrant that issued on information that was ten months old. U.S. customs officials were notified that child pornography from a Danish computer bulletin board system had been brought into the United States via computer. A Danish computer service had records of sixteen phone calls and several downloads by a Seattle man who identified himself as "Jim Bakker." Customs agents traced the calls to the apartment of the defendant, and upon executing a search warrant, agents seized the defendant's computer and found child pornography on its hard drive. In the search warrant affidavit, a trained and experienced customs agent explained that persons who collect and distribute child pornography consider their materials to be of high value, and rarely, if ever, dispose of them. Such materials are often stored for long periods of time in secure places, such as the collector's home. The federal court rejected the assumption that such material is kept indefinitely, but found that it was reasonable to assume that the downloaded images would still be in the defendant's apartment ten months later. Id.
A number of courts have agreed that expert information concerning the retention habits of child pornography collectors is one of the factors that may influence a decision on staleness. In United States v. Wagers, 339 F.Supp.2d 934, 941 (E.D.Ky. 2004), affirmed, 452 F.3d 534 (6th Cir. 2006), for example, the court noted that "In child pornography cases, courts have repeatedly recognized that collectors of child pornography tend to retain their materials." See also United States v. Cox, 190 F.Supp.2d 330 (N.D.N.Y.2002); State v. Evers, 175 N.J. 355, 815 A.2d 432 (2003); State v. Lindgren, 275 Wis.2d 851, 687 N.W.2d 60, review denied, 276 Wis.2d 28, 689 N.W.2d 56 (Wis.2004). See generally Clancy, "The Fourth Amendment Aspects of Computer Searches and Seizures: A Perspective and A Primer," 75 Miss. L.J. 193, 248 (2005). In United States v. Lamb, 945 F.Supp. 441, 460 (N.D.N.Y.1996), the federal court further explained:
Since the [child pornography] materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to quickly destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence. This proposition is not novel in either state or federal court: pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time.
In the present case the affidavit supporting the warrant discusses in detail the expertise and background of the affiant, as well as the affiant's opinion regarding the propensity of collectors of child pornography to retain images for extended periods. Among many other things the affidavit indicates that persons such as Mr. Felix "rarely, if ever, dispose of their sexually explicit materials," and "rarely destroy correspondence received from other people with similar interests unless they are specifically requested to do so."
We conclude that no bright line time period should apply to a staleness analysis in cases such as this. We conclude, as well, that after the passage of some period of time, staleness of the information contained *11 in the affidavit will most certainly invalidate a warrant issued upon it. But not here. In the present case the information contained in the affidavit was about five and one-half months old when the warrant was issued. Given the information in the affidavit, and in considering the totality of the circumstances, we find ourselves in agreement with the magistrate who issued the warrant, and we disagree with the trial judge who concluded that the information was stale.
From a review of the cases it appears that five and one-half months is not an exceptional time lapse between the date of the information contained in the affidavit and the issuance of the warrant. In Lacy, for example, the information was ten months old. In United States v. Hay, 231 F.3d 630 (9th Cir.2000), cert. denied, 534 U.S. 858, 122 S.Ct. 135, 151 L.Ed.2d 88 (2001), the information was six months old. In Hause v. Commonwealth, 83 S.W.3d 1 (Ky.App.2001), it was 178 days old, and in Lamb it was five months old; see also United States v. McCall, 740 F.2d 1331 (4th Cir.1984). Thus, in considering the factors surrounding the affidavit and warrant in this case, we conclude that the information was not stale.
The second significant basis upon which the trial court granted the motion to suppress was that the "affidavit here fails to establish whether the place to be search [sic] was where the criminal act took place and whether the computer used was located at Defendant's new residence." That is to say, the trial court concluded that the information provided in the affidavit did not provide a sufficient nexus between an individual's possession of child pornography on a computer, and the place to be searched, the residence of the owner of the computer. Thus, in the view of the trial court, probable cause did not exist because of a failure of the "nexus" element discussed earlier. See Salyers, 920 So.2d at 749.
Here, according to the affidavit, law enforcement personnel researched the Internet Protocol address of the internet user who sent the three pornographic images to the Maryland undercover site, and found the internet profile associated with the sender, including a photograph of the person associated with the profile. The profile of the sender using the screen name, truebrother999, was eventually further researched by virtue of a subpoena to Bright House Networks, the internet service provider. The appellee, Victor Felix, was identified as the person in question. Law enforcement then located Mr. Felix's photograph and address from his driver's license information, but learned that he had moved to a new address. The detective then visited the apartment complex to which Mr. Felix had purportedly moved, and verified that Mr. Felix lived there. The warrant authorized a search of the then current residence of Mr. Felix.
It seems quite clear that the place that housed Mr. Felix's computer at the time that truebrother999 sent the three images is not the house that was searched. Instead, the search took place in a new location where the appellee then resided. While the trial judge found that this consideration invalidated the warrant as a matter of law, we do not come to the same conclusion. Computers are used in homes, businesses, and almost anywhere else they can be carried. It is reasonable to believe, however, that a fixed computer will most likely remain in the residence of its owner. See Lamb; Evers. In Wagers the court noted that while the Internet Protocol account holder:
had access to the internet from many locations . . . his residence and business locations are certainly the most likely and suspect locations through which he *12 would have accessed the internet. The question, then, is not whether he did or did not access child pornography through the suspect sites from those physical addresses, but rather . . . whether there is a "fair probability" that evidence or fruits of criminal wrongdoing would be found.
Similarly, in State v. Brennan, 674 N.W.2d 200 (Minn.Ct.App.2004), the court reasoned that looking at and possessing child pornography is by its nature "a solitary and secretive crime." It concluded that a reasonable inference could be drawn when issuing a warrant that a suspect would keep computer based images of child pornography in a secret and safe place, like a home. See also United States v. Chrobak, 289 F.3d 1043 (8th Cir.2002); Hay, 231 F.3d at 636 (holding that where affidavit showed that suspect received pornographic images at an internet address assigned to him at his apartment, affiant's statement that persons who possess and transport pornography do not dispose of the sexually explicit material and generally have additional images was sufficient to support probable cause for warrant to search suspect's apartment).
In the present case it was reasonable to assume that even after five and one-half months, Mr. Felix would still be in possession of the images that he uploaded from his computer onto the Maryland police website, and that his computer would be in his residence. The issuing magistrate in determining whether or not to issue a search warrant is charged with making a "practical, common sense decision" concerning whether there is a "fair probability" that evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A valid search warrant does not require that there exist direct proof that the objects of the search are located in the place to be searched. See State v. Weil, 877 So.2d 803, 804 (Fla. 5th DCA), review denied, 889 So.2d 72 (Fla.2004). Given the information contained in the affidavit, the crime being investigated, the nature of the items being sought, and the normal and common sense inferences regarding where one might keep such items, we agree with the issuing magistrate that there was a fair probability that the alleged pornographic images would be found on the computer in the residence of Mr. Felix. We, accordingly, find no fault in the issuance of the search warrant, and reverse the order of the trial court granting the motion of Mr. Felix to suppress.
REVERSED.
SAWAYA and EVANDER, JJ., concur.