HAWKES, C.J.
The State of Florida seeks review of a trial court order suppressing evidence of child pornography found in the Defendant’s residence. The trial court suppressed evidence of the Defendant’s child pornography collection and a related confession in which he admitted to repeatedly *379 committing sexual battery on his six-year-old niece. The trial court found the affidavit supporting the warrant for the search of the Defendant’s residence was void of probable cause and the confession was obtained as a result of the illegal search. We conclude: (1) The county judge had a substantial basis for issuing a warrant for the search of the Defendant’s residence; and (2) Even if the warrant was technically flawed, the good faith exception to the exclusionary rule would apply. Consequently, we reverse.
Facts
On Thursday, December 11, 2008 the parents of the victim, a seven-year-old child named M.S., contacted the Jacksonville Sheriffs Office (JSO) reporting that the Defendant took pornographic photos of M.S. During a forensic interview conducted by members of the JSO’s Child Protection Team, M.S. gave the following information:
On November 28, 2008, she was riding in the Defendant’s car with the Defendant and his six-year-old niece. The Defendant had noticed that M.S. spilled water on her pants and convinced her to pull down her pants and underwear. The Defendant then took out a “gray camera” and instructed M.S. to pose in the back seat of his vehicle so that he could take “a good picture of her rear.” He proceeded to take photographs of her buttocks and vaginal area. After taking a picture, he would look at the camera and say “that’s a good picture.” M.S. further explained that as the Defendant was encouraging her to pull down her pants for the photographs, M.S.’s friend, the Defendant’s six-year-old niece, tried to reassure her by saying: “It’s ok, he takes pictures of me like that all the time.” Detective Soehlig, a member of the JSO “Sex Crimes Unit,” observed the interview:
The following Monday, four days after she learned of the crime and twenty-two days after the criminal activity occurred, Detective Soehlig applied to the county judge for a warrant to search the Defendant’s residence for evidence of child pornography. She included a synopsis of the above interview in her supporting affidavit. The synopsis did not include the specific date of the car trip. Before she submitted the affidavit to the county judge, she had the affidavit reviewed by an Assistant State Attorney, who approved it. In the affidavit, Detective Soehlig requested authority to search the Defendant’s home and to seize computers, electronic storage devices and photography equipment.
After reviewing the affidavit, the county judge issued a search warrant authorizing the JSO to search the Defendant’s residence. The judge simultaneously issued a warrant to arrest the Defendant for violating section 827.071, Florida Statutes, Sexual Performance by a child.
Detective Soehlig and other members of JSO executed the warrant and arrested the Defendant on December 19, 2008. From the Defendant’s home, the officers seized several electronic storage devices and pieces of photography equipment. During a subsequent interview with Detective Soehlig, the Defendant admitted taking photographs of M.S. and also confessed to committing sexual battery on his six-year-old niece over one hundred times in the two years since she turned four. He also admitted to taking digital photographs and video of the encounters, which he stored on his home computers.
Prior -to trial, the Defendant filed a motion to suppress all evidence seized in the search of his residence, as well as his confession. In his motion, he claimed the supporting affidavit was fatally flawed in that it failed to provide the-exact date, of the car ride which provided the informa *380 tion for the affidavit on which the search was based; and, further, that the affidavit lacked any probable cause to believe the illegal photographs would be found in his home.
The trial court granted the Defendant’s motion to suppress, finding as follows:
... considering the warrant itself and confining myself to the four corners of the document, I think that the warrant has failed. The warrant is — does not have any sort of provisions to preclude staleness. There is no indication of— well, there just no — indication of the proximity of the information to the date of the affidavit.
There is nothing to indicate that the information that is contained or that is sought or was presumably taken— there’s nothing to connect that information to the house. There’s nothing in there that indicates, in a manner of probable cause, that there is anything to be found in the house. I agree that there are some deductions that could be made, but I don’t think that can be made based on what’s in the four corners of the affidavit, which I find somewhat unpalatable, but there it is. The motion to suppress is granted.
The trial court subsequently declined to apply the good faith exception to the exclusionary rule, stating:
I think good faith is one of those instances where the officers usually believe the contents of the affidavit were acceptable. I don’t think good faith falls within the category of, shall we say, less than adequate advice by counsel, you know, going into great details about that. I just don’t think this is a situation where the good-faith exception applies much.
Standard of Review
Article I, Section 12 of the Florida Constitution provides that a search warrant must be based on probable cause, supported by a sworn affidavit, and effectuated in conformity with the Fourth Amendment to the United States Constitution. To establish the requisite probable cause for a search warrant, the affidavit included in the warrant application must set forth two elements: (1) the commission element-that a particular person has committed a crime; and (2) the nexus element-that evidence relevant to the probable criminality is likely located at the place to be searched. See Salyers v. State, 920 So.2d 747, 749 (Fla. 5th DCA 2006); see also Burnett v. State, 848 So.2d 1170, 1173 (Fla. 2d DCA 2003).
The task of an issuing magistrate, here the county judge, is to review all circumstances set forth in an affidavit supporting a search warrant and make a “practical, common-sense decision” as to whether there is probable cause to issue the warrant. State v. Gonzalez, 884 So.2d 330, 333 (Fla. 2d DCA 2004). The task of a court charged with reviewing a magistrate’s decision to issue a warrant is to examine the four corners of the supporting affidavit and determine whether the magistrate had a “substantial basis” for making its “practical, common-sense decision” regarding probable cause. Salyers v. State, 920 So.2d at 749; Garcia v. State, 872 So.2d 326, 329 (Fla. 2d DCA 2004).
Our task is to review the trial court’s ruling regarding whether the issuing magistrate made a proper probable cause determination prior to issuing a search warrant. Therefore, our review is de novo. See Pagan v. State, 830 So.2d 792, 806 (Fla.2002); see also State v. Jenkins, 910 So.2d 934, 936-37 (Fla. 2d DCA 2005).
*381 The Affidavit Established a Sufficient Nexus to Demonstrate Evidence of Child Pornography Would be Found in the Defendant’s Residence
There is no dispute that the affidavit establishes probable cause to satisfy the commission dement, the first of the two elements that must be satisfied before a warrant may issue. The second element, the nexus element was contested. The trial court accepted the Defendant’s argument that the supporting affidavit failed to establish a nexus between the evidence sought and the Defendant’s residence. We disagree. It was reasonable for the county judge to determine there was a fair probability that a search of the Defendant’s residence would uncover electronic storage devices containing pornographic photographs of the seven-year-old victim.
When attempting to secure a valid search warrant, an applicant is not required to provide direct proof that the objects of the search are located in the place to be searched. See State v. Weil, 877 So.2d 803, 804 (Fla. 5th DCA), review denied, 889 So.2d 72 (Fla.2004). Nor is the affiant obligated to rebut every possible hypothetical a defense attorney may later imagine. Rather, the applicant must supply a sworn affidavit setting forth facts upon which a reasonable magistrate could find probable cause to support such a search. Id. The issuing magistrate will then analyze the information contained in the affidavit, consider the type of crime being investigated, examine the nature of the items sought, and make a “practical, common sense decision” as to whether there is a “fair probability” evidence of a crime will be found at a particular place. Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); see also State v. Felix, 942 So.2d 5 (Fla. 5th DCA 2006).
In the case at bar, the Defendant was suspected of creating and possessing child pornography. Various courts have recognized the reality that the act of possessing child pornography is a “solitary and secretive crime.” See State v. Felix, 942 So.2d at 10-11. As such, it is widely recognized that collectors of child pornography tend to retain their materials in secure places, including their homes. See id. This principle was succinctly articulated in the federal case of U.S. v. Lamb, which stated:
Since [child pornography] materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to quickly destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence. This proposition is not novel in either state or federal court: pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time.
945 F.Supp. 441, 460 (N.D.N.Y.1996) (emphasis added).
Numerous courts have adopted this principle: It is reasonable for an issuing magistrate to infer that child pornography suspects would store the images in a secret, safe place, such as their home. Id.; see also State v. Felix, 942 So.2d 5.
The Defendant puts forth several possible interpretations of the victim’s statements, all of them far less incriminating than those Detective Soehlig placed on the statements and, obviously, the interpretation the county judge placed on them before issuing the warrant. The possibility that the statements could have less incriminating interpretations does not defeat probable cause. A defendant can almost always present a less incriminating interpretation of the facts set forth in an affida *382 vit. An issuing magistrate’s finding of probable cause will be upheld, so long as the magistrate used “practical, common sense” when reviewing the affidavit and made reasonable inferences from the information therein.
Based on the information in the affidavit, the county judge made a practical common sense inference and determined there was a fair probability that the Defendant had stored pornographic images on an electronic storage device in his home. Thus, the trial court erred in determining the county judge lacked a substantial basis for authorizing a search of the Defendant’s residence.
The Search Warrant Was Not Based on Stale Information
The trial court, appears to have added a third element beyond the two (the commission element and the nexus element) set forth in case law. The trial court determined that the information contained in the supporting affidavit did “not preclude staleness,” finding “there is no indication of ... the proximity of the information to the date of the affidavit.” Again, we disagree.
The amount of time that elapses between an activity justifying a search and the date a corresponding warrant issues is relevant only in determining whether there is probable cause to believe the items to be seized will still be found at the place to be searched (the nexus element). See State v. Jenkins, 910 So.2d 934, 987 (Fla. 2d DCA 2005). Thus, “staleness” relates to the nexus element. This is one aspect of the issuing magistrate’s “practical common sense” evaluation. Generally, the longer the time period between the criminal activity and the seeking of the warrant, the more likely it is that a magistrate will refuse to issue a warrant because there is an insufficient showing that the evidence will still be found at the location to be searched. Id.
Staleness is not a separate element that must be disproved by all search warrant applicants; nor is there a magic words requirement where the affidavit must specifically list every date that each of the events described in the affidavit occurred. See Cruz v. State, 788 So.2d 375 (Fla. 4th DCA 2001). In other words, a magistrate is not required to leave common sense at the courthouse door when evaluating whether or not the information satisfies the nexus element and supports a finding of probable cause. Instead, an issuing magistrate should assess the whole of the information provided in the affidavit application and determine, based on the particular facts of a given case, the nature of the criminal activity involved, and the evidence hoped to be found, whether there is probable cause to believe evidence will be found. See United States v. Lacy, 119 F.3d 742, 745 (9th Cir.1997), cert. denied, 523 U.S. 1101, 118 S.Ct. 1571, 140 L.Ed.2d 804, (1998); see also State v. Felix, 942 So.2d 5, 9-11 (Fla. 5th DCA 2006).
The question for a reviewing court is never: “Does this information preclude every possibility of staleness?” The question for a reviewing court is instead: “Did the issuing magistrate, using ‘practical common sense,’ have a substantial basis to conclude that evidence of criminal activity would be found in the location described in the warrant?” Because this is the relevant inquiry, a reviewing court is not conducting a de novo analysis and should not try to imagine and evaluate every possible claim of how the affidavit could have been better or, if other, less incriminating interpretations could be placed on the information provided. If this were the standard for reviewing courts, the purpose of the warrant requirement would diminish and change the rule from a neutral magis *383 trate’s review of information, using “practical, common sense” to determine whether probable cause exists, into a hypertechnical drafting exercise. Under the rule the Defendant argues for, all warrants would be subject to challenges from defense attorneys who can always point out how any affidavit could have been better.
Applying the requisite “practical, common sense” standard, there are two aspects of the supporting affidavit that defeat the Defendant’s staleness argument. First, a fair reading of the entire affidavit leads to the reasonable conclusion that the events described did not occur in the distant past. Second, the type of crime the affidavit described and the age of the victim support the county judge’s conclusion that sufficient probable cause existed to issue the warrant.
Although courts have rejected the assumption that child pornographers keep their materials indefinitely, when faced with evaluating staleness in child pornography cases, courts have repeatedly recognized that collectors of child pornography tend to retain their materials for long periods of time. See State v. Felix, 942 So.2d 5. In reaching this conclusion, courts reason that because of the illegality of the materials, individuals who succeed in obtaining child pornography are unlikely to quickly destroy it. Id.; see also U.S. v. Lamb, 945 F.Supp. at 460 (holding “[t]his proposition is not novel in either state or federal court: pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time”).
Indeed, the considerable number of courts addressing this issue have held that a warrant to search for child pornography is not stale, even if the criminal activity on which the warrant was based occurred months, sometimes years before the warrant issued.[1]
Although Detective Soehlig neglected to include the specific date of the car ride in the affidavit, a “practical, common sense” evaluation of the circumstances set forth in the affidavit, including the type of crime involved, the age of the victims, the allegedly on-going criminal activity (the six-year-old attempted to reassure the seven-year old by saying “It’s ok, he takes pictures of me like that all the time.”), and the type of evidence sought (digital images of child pornography) indicates it was reasonable for the county judge, the issuing magistrate, to conclude the Defendant presently possessed child pornography on electronic storage devices in his residence. Thus, we hold the trial court erred in determining the detective’s failure to include the precise date the criminal activity occurred in the supporting affidavit rendered the warrant void.
The Good Faith Exception to the Exclusionary Rule
Even if the Defendant were correct in arguing the affidavit supporting the *384 search warrant was technically flawed, we would still reverse the suppression of his child pornography collection and subsequent confession, pursuant to the good faith exception to the exclusionary rule.
According to the United States Supreme Court’s analysis, suppressing evidence when a law enforcement officer presents information to a neutral magistrate and then acts in objectively reasonable reliance on the magistrate’s decision, benefits neither the officer who acts on the warrant or the public in general. In fact, under these circumstances, the substantial cost of exclusion cannot be justified. See U.S. v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); see also Johnson v. State, 660 So.2d 648 (Fla.1995). Specifically, the United States Supreme Court stated:
We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.... Searches pursuant to a warrant will .rarely require any deep inquiry into reasonableness ... for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search....
U.S. v. Leon, 468 U.S. at 922, 104 S.Ct. 8405.
.To determine whether an officer acted in objectively reasonable reliance upon the validity of a warrant, courts must assess whether, given the totality of the circumstances, an officer “armed with the information possessed by the officer who conducted the search” would have believed the warrant to be valid. Id. at 922, 104 S.Ct. 3405.
Suppression is reserved as a remedy only in cases where a warrant is based on an affidavit so lacking in any indicia of probable cause as to render “an officer’s belief in its existence entirely unreasonable.” See id. (calling for suppression in instances where an officer conducting a search has no reasonable grounds for believing that the warrant was properly issued.); see also Montgomery v. State, 584 So.2d 65, 67-68 (Fla. 1st DCA 1991). As the Supreme Court held, “[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness.” Id. (emphasis added). This is not one of those rare cases.
Here, the search warrant was not so lacking in any indicia of probable cause as to render Detective Soehlig’s belief in its validity entirely unreasonable. There are at least five facts supporting her belief that the warrant was valid. First, Detective Soehlig was present during the victim interview in which M.S- explained how the Defendant coerced her into pulling down her pants so he could photograph her buttocks and vagina. Second, Detective Soeh-lig personally filled out the affidavit, citing the grounds for the warrant with knowledge of the fact that the photographs were taken only twenty-two days earlier. Third, she sought out an Assistant State Attorney who reviewed the affidavit and informed her it was sufficient to present to the county judge. Fourth, she herself presented the application to the county judge. Fifth, she watched as the judge issued the warrant.
Perhaps if the Defendant had offered evidence to suggest that the county judge did not actually review the information provided and just signed the warrant, or that the detective had lied in the affidavit misleading the issuing magistrate, the Defendant may be able to show it was unreasonable to rely on the warrant. No such *385 evidence was presented. Barring evidence of this magnitude, it is not reasonable to engage in the “deep inquiry” the Defendant urges. If this were the rule, all law enforcement officers would be required to second-guess every decision a judge makes regarding probable cause. There is no reason to believe that they are equipped for such a task or that society would benefit from such practice.
Given the circumstances, it is apparent that a reasonable, well-trained officer “armed with the information” possessed by Detective Soehlig would have believed the warrant to be valid. It was therefore objectively reasonable for her to conduct the search of the Defendant’s residence despite the Defendant’s argument that the affidavit could have been better.
We reverse the trial court’s order to suppress both the evidence and confession and we remand for further proceedings consistent with this opinion.
REVERSED.
VAN NORTWICK and THOMAS, JJ., concur.

. See, e.g., State v. Felix, 942 So.2d at 10-11; U.S. v. Lacy, 119 F.3d at 745 (upholding a defendant's conviction for possessing child pornography despite a search warrant that issued on information that was ten months old.); U.S. v. Ricciardelli, 998 F.2d 8, 12 (1st Cir.1993) (stating, "history teaches that [pornography] collectors prefer not to dispose of their dross, typically retaining obscene materials for years”); U.S. v. Irving, 452 F.3d 110, 125 (2d Cir.2006) (holding child pornography activity two years old was not stale); U.S. v. Peden, 891 F.2d 514, 518-19 (5th Cir.1989) (finding that a warrant based on a two-year-old delivery from suspected child pomographers and an eight-year-old conviction for solicitation of a minor was not stale); U.S. v. Prideaux-Wentz, 543 F.3d 954 (7th Cir.2008) (declining to find that in child pornography cases evidence that is two to four years old is stale as a matter of law); U.S. v. Rabe, 848 F.2d 994, 996 (9th Cir.1988) (upholding warrant despite two-year delay between original seizures and its issuance); U.S. v. Riccardi, 405 F.3d 852, 860-61 (10th Cir.2005) (holding same for five years).